### BEAUMONT S. L. & W. RY. CO. v. SCHMIDT.
### No. 2614.

Court of Civil Appeals of Texas. El Paso.
Jan. 14, 1932.

Rehearing Denied Feb. 4, 1932.

Robert F. Campbell, T. A. Slack, and Andrews, Streetman, Logue & Mobley, all of Houston, for appellant.

Fulbright, Crooker & Freeman, John H. Crooker, and M. C. Chiles, all of Houston, for appellee.

WALTHALL, J.

This is a suit for damages for personal injuries. At the time of the happening of the circumstances involved here, appellee was in the employ of appellant railway company as telegraph operator and clerk at Huffman, Tex., a station on appellant's line of railroad. At Huffman appellant maintained a nearby well and water tank, used for supplying its trains with water. The water was pumped into the water tank from the well by means of a kerosene or oil burning engine. At the time appellee received his injuries complained of in this suit, he was operating the water engine pump, as was one of his duties, and had oiled the engine, and while in the act of turning away from the engine after inspecting an oil cup located over the engine gearing or cogwheel, and used as an appliance in oiling the engine machinery, to see whether the oil was dripping properly from the oil cup, when his clothing, that is, his sweater he was wearing became entangled in certain rotating parts of the machinery thereby pulling appellee backwards into the machinery of the water pumping plant, causing his right arm to become caught between two exposed meshed cogwheels, and to be cut off. The water pump and engine were connected by means of a clutch, a mechanism which revolves swiftly, when in motion, on the shaft of the engine; the clutch extending out from the shaft in a V shape when engaged with the pump and in operation, but which lies practically flat when disengaged. The two collars of the clutch working on the shaft of the engine are connected by means of links about six inches in length. One end of each link is attached to the collar, and the other ends of the links are joined about midway between the two collars by means of pins through the ends of which cotter keys are, or are supposed to be, fixed. On the occasion in question, instead of using cotter keys in said pins, eight or ten-penny finishing nails about 2¾ inches in length were used. At the time appellee was injured, these nails were protruding from the apex of this V-shaped mechanism of said clutch while appellee had turned back from oiling the machinery then engaged, to see that the oil cup was properly dripping oil, the back of his sweater was caught by a nail used for a cotter key, as described, and appellee was jerked into said engine and injured.

Appellee assigned as negligence on the part of appellant the use of the nails in place of cotter keys in the clutch of said engine, allowing said nails to extend and protrude in such manner as to catch on objects coming in contact therewith; that he (appellee) was not a mechanic, and had no technical knowledge of the operation of the engine and pump involved; that he had no notice, knowledge, or instructions as to the mechanical operation of said engine and pump machinery, and no warning or instruction as to any danger to be encountered in the operation thereof; and that said machinery and clutch, in the condition described, was dangerous, and that the acts stated were negligence on the part of appellant and proximately caused the injuries and damages complained of, stating his injuries and the damages sustained, for which he sued. Other matters of negligence are reflected in the issues submitted, which we need not here state.

Appellant answered by a general denial and special pleas in bar of the cause of action; that appellee had assumed the risk of the dangers and hazards which caused his injuries; that the damages encountered were such only as were ordinarily incident to appellee's employment, and were open, obvious, plain, and simple, and were fully appreciated by appellee; that they must necessarily have been observed and appreciated by any person of ordinary prudence similarly situated; appellant further pleaded contributory negligence on the part of appellee.

On special issues submitted, on a preponderance of the evidence, the jury found substantially as follows:

(1) Defendant, on the occasion in question, allowed nails to be used in the place of cotter keys through the bolts holding the links of the clutch of the engine in question.

(2 and 3) Such action on the part of defendant was negligence as that term is defined, and was a proximate cause, as defined, of the injuries complained of.

(4, 5, and 6) The defendant, upon the occasion in question, allowed nails used in the place of cotter keys, attached to the clutch of the engine in question, to protrude in such manner that the same would, while said clutch was revolving, hang or catch on objects with which the same came in contact, and was negligence, as that term is defined, and was a proximate cause of the injuries complained of.

(7) Plaintiff, upon the occasion in question, was unskilled in the operation of machinery of the kind and character here in question.

(8) The revolving clutch of the engine in question upon the occasion in question, as it was equipped with nails in the links, and under all the facts in evidence was dangerous for a person unskilled in the operation of such machinery to operate.

(9, 10, and 11) The defendant failed to exercise ordinary care, as that term is defined to us, to warn the plaintiff, prior to the time of his injuries, of the dangers that might reasonably be encountered from said revolving clutch; such failure to exercise ordinary

care to warn plaintiff of the dangers as found under issue 9, was negligence; and such negligence was a proximate cause of plaintiff's injuries complained of.

(12) "Do you find from a preponderance of the evidence that plaintiff knew it would be dangerous if he got his clothing or any part of his body in contact with the rapidly revolving gears of defendant's engine and machinery? Answer yes or no as you find the facts to be." The jury answered "No."

No issue 13 is in the record.

(14) Plaintiff knew if he caught his arm between the revolving cogwheels of defendant's engine and pump he would probably be hurt.

(15) Plaintiff's accident and resulting injuries were not proximately caused by his failure to exercise ordinary diligence in thinking about his work and about the dangers that he was encountering in such work.

No issue 16 is in the record.

(17) A person of ordinary prudence of plaintiff's age and experience, with the particular engine and pump machinery in question, placed in the same or a similar situation would not have comprehended the danger of the exposed revolving gears.

(18) The condition of the clutch and its parts were not open and obvious to view.

(19) (a) and (b) not answered.

(20) Plaintiff, standing as he did in such proximity to such engine and machinery while in motion, did not fail to exercise ordinary care to keep himself and his clothing a safe distance therefrom.

(21) Conditional and not answered.

(22) Plaintiff was not negligent in permitting some part of his sweater to become caught in the rapidly revolving shaft or clutch mechanism of defendant's engine and pump.

(23) Conditional and no answer.

(24) Plaintiff's accident and resulting injuries were not proximately caused by his failure to take reasonable care to keep himself and clothing a safe distance from the moving parts of such engine and pump.

(25) Plaintiff was not negligent in working, without objection, on or about the engine and pump machinery in the condition it was at the time of his accident and resulting injuries.

(26) Conditional and no answer.

(27) Plaintiff was not negligent in taking the position he did while the engine and pump were in operation in attempting to determine whether the oil cup was dripping (oil).

(28) Conditional and no answer.

(29) On the issue submitting the value or amount of plaintiff's damages, the jury answered, $20,000.00.

Then follow appellant's exceptions and objections to the court's charge, and its submitted peremptory instruction to find for appellant, and other submitted special instructions, submitted subject to its peremptory instruction to find for appellant. The court refused to give appellant's requested peremptory instruction, and, on the findings of the jury to the special issues, rendered judgment for appellee for the sum of $20,000 as found by the jury. The court overruled appellant's original and amended motions for a new trial, to which appellant duly excepted, and prosecutes this appeal.

### Opinion.

Appellant's first specification of error is directed to the overruling of its requested peremptory instruction to the jury to find in its favor.

Under this specification, appellant submits that none of the allegations of negligence and proximate cause contained in appellee's petition were sustained by the evidence. Some of the matters assigned in the petition as negligence were not submitted to the jury; we will consider briefly only such matters as were submitted to the jury, and upon which the judgment is based.

Appellant introduced no evidence on any of the issues submitted.

█ In passing upon the question of instructing the jury in favor of appellant, it is well established, by both federal and state courts, that the trial court must take the evidence in its most favorable light to the appellee's theory of the case, and, to justify a peremptory charge in appellant's favor, the evidence, on every issue of negligence submitted, must be so lacking in probative force that reasonable minds could not draw different conclusions therefrom.

Ladies' Benevolent Society of Beaumont v. Magnolia Cemetery Company (Tex. Civ. App.) 268 S. W. 198; Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059; Owen v. Securities Co. (Tex. Civ. App.) 296 S. W. 620; Harrison v. Orr (Tex. Com. App.) 10 S.W.(2d) 381; Harpold v. Moss et al., 101 Tex. 540, 109 S. W. 928; Rogers-Hill & Co. v. San Antonio Hotel Co. (Tex. Civ. App.) 7 S.W.(2d) 601; T. & P. R. R. Co. v. Harvey, 228 U. S. 319, 33 S. Ct. 518, 57 L. Ed. 854; Richmond & D. R. Co. v. Powers, 149 U. S. 43, 13 S. Ct. 748, 37 L. Ed. 642.

Appellee had been in the employment of appellant for several years prior to the time of the accident involved here; during which time it was a part of his duties to attend to the water pump, as it was on this occasion. Appellee's trade was that of telegraph operator, and looking after the pump was a part of his duty as operator, and for that service he received extra pay.

It is impossible to state here much of the evidence as it was heard in the trial court,

738

for the reason that on the trial appellee drew two sketches of what witness designated as the "clutch"; one indicating the clutch in operation, and one indicating the clutch not in operation, and on the sketches indicates other parts of the appliances such as links, pipe, shaft, cogwheel, lever, and collar, and testified in reference to each, pointing out and indicating the uses of each, the location of the oil cup with reference to the other machinery and appliances, his position with reference to the machinery and appliances when in the performance of his duty of putting the plant in motion.

Appellee stated that his position was the only place from which could be seen whether the plant was working properly; that he had gone there to oil the engine and pump; that the first thing he did was to shut off the engine; he then oiled the engine and filled the oil cups, and then started the engine; after starting the engine appellee started out of the pump house; he went around the front end of the engine and started out of the door; he looked to see if the oil cup by the gear or cogwheel was dripping oil, but could not see from where he was, so he walked around the shaft on the north side of the engine and stood in "that L that the shaft and cog wheel forms" and saw that the oil cup was dripping properly; said: "I had turned to my left to start out, and I heard a noise and partly turned and something grabbed me from behind here somewhere (indicating) and jerked me down, and as it jerked me down I threw out my arm like that, and this arm was on the cog wheel side; it was my right arm and it was mangled and cut in this cog, and I tried to get out of it but couldn't, and the cog finally completely cut my arm off, and in the meantime my sweater had stopped this engine by me struggling there and one thing and another, and the sweater had completely worked up as far as it could on my back, on the back of my neck, and I was held suspended in the air with my feet touching the floor. * * * I started hollering for help and Mr. Presswood came over and helped me out. * * * I did not know that these links protruded and extended out further from the shaft when the gear was in than it did when it was not. I learned that after I got out (of the hospital.) * * * I am not a machinist, * * * never had any machinist experience at all."

Appellee testified at some length as to the mechanical parts of the engine, pump, gear, and shaft, etc., the relation of one part to another, and what was necessary to be done to operate the plant, and that he had such knowledge since his injury. Further said: "That is the thing right there (indicating on sketch) that I heard the witness (Presswood) tell about the nails being in; that is what my sweater was wound in; the thing on the map marked 'L' is the thing that expands; that's where my sweater was, and that's where the nails were. * * * I had never seen them (the nails) before I was hurt, but I have seen them since. * * * I never had any thing to do with the links before I got hurt; before I got hurt no one ever told me that these links extended out further when the thing was in gear, and no one ever made any explanation to me at all about this clutch."

On cross-examination appellee testified: The water service man told him there was a rule not to attempt to oil the engine or pump or work about it while it was running, and to always stop it when I started to oil it. Appellee took an examination of the rules. Had started and stopped the pump hundreds of times; the pumphouse, the pump, and engine were the same as they were when he went there.

B. Presswood testified: Heard appellee scream and ran to the pumphouse. When he reached there he found appellee "swinging up in the shaft," his arm bleeding, severed at the elbow. Witness got him out, cut his sweater; his sweater was wound up to the shaft and came up to the back of his neck; the engine was choked up with the sweater, and witness cut the sweater loose and let appellee down; the sweater was swinging up to the shaft; there were some links, two links in each side, coupled together, one on each side of the shaft that turns many revolutions to the minute; where the links come together is like a cup; "a bolt or cotter key goes through this and instead of having a cotter key in it, it had a finished nail in it. There was a nail sticking out from the point where those two links came together. With reference to those nails, the sweater was wound around over the nails and the head of this thing that turns round, that is what choked it down. It was wound up in there. I did not measure the nail to see how long it was sticking out, it was something like an eight or ten penny nail; I would say it was 2¾ inches long; * * * it (the nail) was serving in place of what we call a cotter key. There was absolutely nothing around those links or that shaft there to keep an object from becoming entangled in it."

L. C. Fink, a machinist, testified: Had seen and examined the engine and pump in question. Explained to the jury how the clutch is made and is put together and operates; said: "There are links commonly called dogs that extend out when the clutch is in gear; they stand out about that angle, about sixty degrees angle, on each angle. There is a set on each side of that clutch; there are two clutches. There are two sets of links on each side commonly called double clutches, and when that clutch is in gear those links set up about a sixty degree angle, and when running neutral they lay almost parallel with the shaft and those clutches, of course, they

join together like a hinge, and pins go through the hole to hold them in place, and these pins had either nails or pieces of wire in where they should have had cotter keys, and in place of cotter keys they had wire or wire nails, I could not tell, they were sticking through. When you start the engine the clutch rotates all the time. It rotates with the shaft. * * * When it was running it would appear almost transparent. * * * If I had not had practical experience I would not be looking for it (the change in the links from flat to the protruding and sharp position). With reference to your question that if that clutch on the shaft, if it had not had some sharp object protruding out on it, sticking out, would it ordinarily catch on anything or come in contact with it, my answer is, it would have a tendency to knock anything out of the way; if it did not have a cotter pin, or a piece of wire in there to catch. Those links I have been talking about from a mechanical standpoint, and your question as to how they are made, they are rounded to keep them from catching on anything. * * * the pins are ordinarily rounded."

▉ It is difficult to state a word picture of the machinery on which the appellee was injured, nor can we reproduce in the opinion a sketch of the machinery from the exhibit found in the record, and from which the witnesses so largely testified. We have concluded from the evidence heard in connection with the sketch that the court was not in error in submitting the case to the jury. We do not concur in appellant's insistence that there was no evidence that appellee's sweater was not caught over the nails in the links. It would extend the opinion to too great length to review the cases referred to by appellant in an effort to distinguish them in the facts from the instant case. We are not unmindful of the universal rule that negligence may not be found from the mere happening of the accident. Proof of negligence is essential to recovery. The evidence is clear that appellee's business was that of a telegraph operator, and that he was not a mechanic or had knowledge of the machinery incident to the water pumping plant. We think the undisputed fact that the 2¾ inch ordinary eight or tenpenny finishing nails in the apex of the V-shaped mechanism, having been in use there for some time, was at least presumptive evidence of notice to appellant of their use. The evidence is that instead of nails there should have been cotter keys. As said by Justice Day in C., O. & G. R. Co. v. McDade, 191 U. S. 64, 24 S. Ct. 24, 48 L. Ed. 96, that where no necessity exists for the use of dangerous appliances, and where it is a matter requiring only due skill and care to make the appliances safe, there is no reason why an employee should be subjected to dangers wholly unnecessary to the proper operation of the business of the employer.

Appellant pleaded that appellee assumed the risk incident to the duty of operating the pump and engine appliances, and in its second, third, fourth, and fifth propositions submit error to the court's refusal to give its submitted peremptory charge.

Under these propositions, appellant quotes and stresses the statement of the evidence made under its first proposition, and, in connection therewith, that appellee had been informed of appellant's rule that appellee should not work on or about the machinery while in motion; that under appellee's admission it would have been less hazardous to have shut off the machinery; that appellee had been working with the plant for several years; at the time of his injury he "gave no thought to the danger"; that he had never complained to appellant of the machinery; that he "knew it was dangerous to be around the running machinery with loose clothing"; that he had on a sweater that caught in the clutch of the machinery; and that there was nothing to keep him from seeing the revolving clutch. Appellant suggests that it being a common carrier engaged in interstate commerce, and appellee himself in performing such service was engaged in interstate commerce, the rights of each depend upon and are controlled by the act of Congress known as the Federal Employers' Liability Act (45 USCA §§ 51–59), and the applicable principles of the common law as interpreted by the federal courts, and that under the undisputed facts assumed risk becomes one of law for the trial court, and it was the duty of the court to have instructed the jury that appellee voluntarily assumed the risk of the danger incident to his employment of operating said machinery, and that such being the law it was error to refuse appellant's requested peremptory instruction.

▉ We are not prepared to hold, as suggested by appellant, that under the facts of this case the question of assumed risk becomes one of law for the court, and not one of fact for the jury.

We repeat an expression or two of appellee in his evidence: "At the time I was hurt on this engine I did not know that the links protruded and extended out further from the shaft when the gear was in than it did when it was not. I learned that after I got out of the hospital and went down and inspected it. * * * When this engine and pump were in gear the links that are marked 'L' were extended into a diamond or 'V' shape. When they were out of gear they came up close to the shaft; they were not exactly flat but very nearly so. I did not know that at the time. I did not pay any particular attention to any of the mechanical parts of pump or engine before that. It was not necessary to work on these things in order to operate the pump. In order to get the thing started to operating,

the parts of the engine I would manipulate were the lever that puts those cogs in gear and the fly wheel. That's about all you'd touch besides the switch to start it with. * * * When you'd pull that lever the links that are marked 'L' would expand out. At the time my arm was cut off I did not know that's what happened when I pulled the lever. * * * All I know about these links I have learned since I got my arm cut off. * * * That is the thing right there (indicating on the sketch the clutch links) * * * that's where my sweater was, and that's where the nails were. I hadn't paid any attention to these nails that the witness, Mr. Presswood told about being in these links, at the time I was hurt, or any time before I was hurt, but I have seen them since. * * * I never had anything to do with the links before I got hurt. Before I got hurt no · one ever told me that these links extended out further when the thing was in gear, and no one ever made any explanation to me at all about this clutch."

Without quoting further, appellee testified that as operator-clerk they had whatever duties the agent assigned them, and occasionally he would run the pump when instructed to; they ran the pump only at irregular times, "may be once or twice a month and may be two months at a time"; only when the agent couldn't fill the tank.

█ Appellant refers us to a number of federal court cases, among them Butler v. Frazee, 211 U. S. 459, 29 S. Ct. 136, 138, 53 L. Ed. 281. The case was brought in the District of Columbia. We need not discuss the facts of the case more than to say that the suit was an action to recover damages for personal injuries sustained in operating a laundry mangle, and the question discussed was whether plaintiff in error assumed the risk. As we view that case, Mr. Justice Moody, in delivering the opinion of the court, was stating the common-law rule of assumed risk where not modified by statute, and said that the common-law rule of assumed risk has not been modified in the District of Columbia, and that the court had no other duty than to enforce it. The court stated the law to be that one who understands and appreciates the permanent conditions of machinery, premises, and the like, and the danger which arises therefrom, or by the reasonable use of his senses, having in view his age, intelligence, and experience, ought to have understood and appreciated them, and voluntarily undertakes to work under those conditions and to expose himself to those dangers, cannot recover against his employer for the resulting injuries, and that upon such state of facts the law declares that he assumes the risk. In that case the court said: "The contention, however, is that, as the plaintiff testified in substance that she did not know and appreciate the danger which she was en-

countering, that testimony, with the other facts in the case, raised an issue for the jury, and that it could not be said, as matter of law, that the risk had been assumed. This contention is sustained by a well-considered case," and referred to several cases.

Under the rule as announced above, we think the evidence as above quoted necessarily would take the case to the jury. We understand the law to be as stated in Gulf, G. & S. F. Ry. Co. v. Jackson, 49 Tex. Civ. App. 573, 109 S. W. 478, 481, by the Austin court, a writ refused, that the servant should use ordinary care to learn the duties of his employment and the safest way of performing the same, and that he assumes risks that are open and obvious to him as well as to the employer; but that he does not assume the risk where he is inexperienced in the employment and ignorant of the danger incident to the work, and that the same is not apparent and obvious to him, and especially would that be true where the employer knew the danger, or is charged with such knowledge, and failed to warn the employee. In stating the above, on assumed risk, Judge Rice referred to a number of cases in Texas and elsewhere, to which we refer.

In the Butler v. Frazee Case, supra, it is said that, where the elements and combination out of which the danger arises are visible, it cannot always be said that the danger itself is so apparent that the employee must be held, as a matter of law, to understand, appreciate, and assume the risk of it, and refers to Texas & P. R. Co. v. Sweringen, 196 U. S. 51, 25 S. Ct. 164, 49 L. Ed. 382, and other federal court cases, and holding that in such cases the question of assumed risk is plainly for the jury. It certainly would be so in the instant case where the shaft with the two rings or links on each side the nails protruding about 2¾ inches; the shaft revolving some four hundred revolutions to the minute.

█ In a number of propositions, appellant complains of the submission of the use of nails in place of cotter keys as negligence and the proximate cause of appellee's injuries, as not being assigned as negligence in the petition, and in overruling its motion for a new trial on the ground that there was no competent credible evidence to support the jury's finding in response to issues 3 and 4, finding negligence in the use of nails in place of cotter keys, and that such negligence was the proximate cause of appellee's injuries; and in submitting issue number 7, whether appellee was skilled or unskilled in the operation of the machinery; and overruling the motion for new trial in submitting issue No. 9, inquiring whether appellee exercised ordinary care; and in overruling the motion for a new trial for want of evidence in support of the jury's finding Nos. 10 and 11, in not

warning appellee of the danger of the revolving clutch, and other similar issues. We think the petition is sufficient to require the submission of such issues, and the evidence sufficient to sustain the jury's finding on such issues. We need not here restate the pleading or the evidence. We have already stated the evidence in considering previous issues. We do not concur in the contentions of appellant on the submissions of said issues, and they are overruled.

It was appellee's duty to see that the oil cup was dripping oil. The jury found appellee was not negligent in taking the position he did in seeing that the cup was dripping oil. Error is assigned to the overruling of the motion for a new trial on the ground that its special issue No. 21 as to appellee's negligence in not looking when he started to turn away from the engine and pump with its revolving and exposed parts. Appellee testified that he had never observed or noticed any change from a flat to a protruding position of the clutch links; did not know of such change until after he was hurt. Fink testified that, had he not had practical experience, he would not be looking for such change in the position from flat to a protruding and sharp position of the links while the machinery was operating. Of course if appellee did not use ordinary care under all the facts and circumstances then surrounding him in turning away from where he was after observing the oil cup he could not recover.

■ In studying the issues submitted to the jury, while the court did not submit an issue in the language of the appellant's special issue, the court did, in several issues, especially in issue No. 27, submit the issue of appellee's negligence in taking the position he did while the engine and pump were in operation in determining whether the cup was dripping oil. It seems to us that to submit an issue as to whether appellee was negligent in not looking when he turned away from the engine and pump after observing the oil cup would not be an ultimate issue, but an element of fact which the jury would necessarily consider in determining the negligence submitted.

■ The same, we think, can be said of appellant's issue No. 32, asking whether it was negligence on the part of plaintiff "in attempting to perform some duty about the engine and pump while such engine and pump were in operation." The court had submitted several issues of ordinary care on the part of appellee; also issue No. 27, in taking the position he did when seeing whether the cup was dripping oil. He was injured while in the act of turning from that particular duty. The performance of no other act would seem to be material. We think the inquiry had been sufficiently submitted.

■ It was appellee's duty to operate the plant, and oil the machinery, and see that the cup dripped oil. It could not be negligence to perform such duties unless appellee knew of, or it was apparent to him, such dangers in the performance of his duties that would prevent an ordinarily prudent person from performing such duties. The submitted issue does not embrace such conditions of knowledge of danger, nor does the evidence show such knowledge of danger, as to justify the submission of the issue.

■ The court refused to give appellant's requested charge: "Do you find from a preponderance of the evidence that the injuries sustained by plaintiff on the occasion in question did not proximately result from an accident?"

Appellant assigns error.

In discussing the question, appellant observes that there is no testimony as to the exact cause of appellee's clothing becoming caught in the revolving gear. The witness Presswood said: "His sweater was wound up to the shaft and come up to the back of his neck, the engine was choked up with the sweater. * * * There was a nail sticking out from the point where those two links come together. With reference to those nails the sweater was wound around over the nails, and the head of this thing that turns around, that is what choked it down. * * * I did not measure the nails to see how long it was sticking out, I would say it was about 2¾ inches long."

Presswood's evidence, with the above statement from appellee's evidence, is all that was offered on the question as to what caused the sweater to be caught or become entangled in the links of the machinery.

From the several findings, the jury evidently concluded from the evidence and the attendant circumstances that the nails used in the links in place of cotter keys caught in the back of appellee's sweater and pulled him into the machinery. We must accept that theory. Assuming that the nails in the links caught the sweater and drew appellee into the machinery, and there is no evidence in the record to support any other theory, we have concluded no error is shown in refusing to submit unavoidable accident. If the nails in the links caught the sweater and caused the injuries to appellee, the cause of the accident was well known; and if the presence of the protruding nails was negligence and the proximate cause of the accident, as found by the jury, we see no room for the submission of unavoidable accident, unless appellee was negligent in some way which proximately contributed to cause the accident. An act cannot at the same time be negligence and unavoidable. We may not assume that the jury

would find directly opposite as to the same act.

 We cannot say the amount of the damages found is excessive.

We have found no reversible error, and the case is affirmed.