### HENWOOD v. GARY.
### No. 14786.

Court of Civil Appeals of Texas.
Fort Worth.
Oct. 4, 1946.

Rehearing Denied Nov. 1, 1946.

Hamilton, Dyer & Shults, of Dallas, and Cal Estill, of Fort Worth, for appellant.

Simpson & Simpson, Marvin B. Simpson and Harris Brewster, all of Fort Worth, for appellee.

McDONALD, Chief Justice.

Appellee was employed as a switchman by appellant. On December 3, 1944, he and other employes were engaged in switching operations in a railroad yard at Fort Worth. Appellee was instructed to adjust the couplers on certain cars which were to be included in the switching operations. His specific instructions were to open the couplers so that the cars would readily couple on impact. Such couplers have so often been described in published opinions of the courts that it is not necessary to describe them in detail here. Suffice it to say that appellee endeavored to open the coupler on a certain car by using a lever on the car which is commonly used

for that purpose, and which is designed to enable the railroad employee to open the coupler without having to go between the cars. Appellee was unable to open the coupler by using the lever, and then went between the cars and attempted to open the coupler with his hands. While so engaged, another railroad car rolled against the car on which appellee was working. Appellee's hand and arm were severed when caught between the two couplers. Appellee recovered judgment on verdict of the jury for $20,000.

Appellee's suit was based in part on an alleged violation of Section 2 of Title 45 U.S.C.A., often referred to as the Federal Safety Appliance Act, which provides, to quote from the Act: "It shall be unlawful for any common carrier engaged in interstate commerce by railroad to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars."

Appellant first complains of the manner in which the trial court submitted to the jury the questions relating to the alleged violation of the above Act. The first five issues which the court submitted inquired substantially as follows: (1) Did appellee attempt in a reasonable and proper manner to open the coupler by the use of the pin lever? (2) Did the pin controlling the coupler fail to operate under such attempt? (3) After such failure, did appellee attempt to open the coupler with his hand? (4) Was appellee's hand or arm caught between the coupler knuckle and the coupler on another car while appellee was attempting to open the coupler with his hand? (5) Was the failure of the pin to operate a proximate cause of appellee's injuries?

Appellant charges that the court submitted only evidentiary issues, and not the ultimate issues which the case presented, and contends that the court should have submitted instead the two issues requested by appellant, which inquired substantially as follows: (1) Was the coupling apparatus on the cars which came together at the point where appellee was working in such condition that the couplers would not couple automatically by impact without the necessity of appellee's going between the ends of the cars? (2) Was the condition of the couplers so that they would not couple automatically by impact the proximate cause of the accident and the injuries to appellee?

As even a cursory examination of the cases will demonstrate, it is not always easy to distinguish between evidentiary and ultimate issues. When the cases are examined in detail, it will be seen that in most of them where the question was discussed the court refused to reverse for failure to give a requested issue, on the ground that the requested issue was an evidentiary issue as distinguished from an ultimate or controlling issue. In not many cases that have come to our attention was there a reversal on the ground that judgment below had been rendered on evidentiary rather than on ultimate issues. We have not found any case in which there was a reversal under circumstances like those presented in the case on appeal, although one case has been cited in which the Supreme Court approved submission of issues somewhat similar to those requested by appellant in this case. Texas & N. O. R. Co. v. McGinnis, 130 Tex. 338, 109 S.W.2d 160.

A review of the decisions of both state and federal courts construing the above Act reveals that the purpose of the Act is not merely to require that cars couple automatically on impact, but that the coupling equipment be so constructed and maintained that the employees of the railroad company will not have to go between the cars, either to couple the train or to uncouple it, Johnson v. Southern Pacific Co., 196 U.S. 1, 25 S.Ct. 158, 49 L.Ed. 363; or to prepare the couplers so that the cars will couple when they later come together, Atchison, T. & S. F. Ry. Co. v. Keddy, 9 Cir., 28 F.2d 952, and cases there cited.

In the case before us the complaint made is not that the cars would not couple automatically on impact without the necessity of appellee going between the cars. The precise complaint is that in order to pre-

960

pare the cars so that they would later couple on impact, appellee had to go between the cars. The statute, as construed by the decisions, protects the trainman while he is preparing the cars for coupling. Or, to put it another way, there is a violation of the statute where the coupling equipment is in such condition that the coupler cannot be opened by the use of the lever which is designed and intended for that purpose, without necessity of the trainman going between the cars. So, the fact which the court needed to know, before rendering judgment, was whether appellee could open the coupler by a reasonable use of the lever. The court did not need to know whether the cars would later couple automatically on impact without appellee having to go between the cars.

"The form of the special issues employed in submitting each case to the jury must depend in some measure at least upon its own peculiar pleadings and evidence and the practical difficulties the trial judge is faced with in ascertaining, through special issues, the essential facts." Wright v. Traders & General Insurance Co., 132 Tex. 172, 123 S.W.2d 314, 317.

The issues which were submitted to the jury more nearly went to the heart of the fact question controlling this case than would have the issues requested by appellant.

"In so far as the Supreme Court of the United States has spoken on the subject, we draw the conclusion that this statute imposes an absolute duty on a railroad engaged in interstate commerce to have couplers that will at all times, when operated in an ordinary and reasonable manner, work without necessitating employés going in between the cars. (Citing cases.) To say that the law has been complied with when the coupler can be made to work only after extraordinary efforts, or sporadically, or by opening the knuckle thereof with the hand, would give very little protection and relief to employés. If a coupler fails to work when an honest and reasonable effort is made to operate it, under circumstances and in the manner it is designed to be operated, we conclude the law is not complied with." Burho v. Minneapolis & St. L. Ry. Co., 121 Minn. 326, 141 N.W. 300, 302.

Appellant's other points of error pertain to two other alleged grounds of liability. Since the findings of the jury on the issues above described are sufficient to support the judgment, we shall not undertake to pass on the other points of error.

The first four points of error are overruled, and the judgment of the trial court is affirmed.