**TRI–COUNTY ELECTRIC COOPERATIVE,**
Inc. v. CLAIR et al.

No. 14998.

Court of Civil Appeals of Texas.
Fort Worth.

Jan. 21, 1949.

Rehearing Denied Feb. 18, 1949.

Fulgham & Borden, both of Weatherford, and Cantey, Hanger, McKnight & Johnson, Charles Stephens and J. A. Gooch, all of Fort Worth, for appellant.

Martin, Moore & Brewster and Arthur Lee Moore, all of Fort Worth, for appellees.

Holloway, Crowley & Hudson and Luther Hudson, all of Fort Worth, for intervenor, Aetna Casualty & Surety Co.

McDONALD, Chief Justice.

Appellant is incorporated and operates under the provisions of Article 1528b, Vernon's Tex.Civ.St., known as the "Electrict Cooperative Corporation Act", which provides for incorporation of cooperative, non-profit membership corporations for the purpose of engaging in rural electrification in the manner set out in said statute. At the time of the accident here involved, appellant maintained an electric transmission line across the farm of I. H. Scoggins, in Parker County. Said line consisted of poles and two wires strung thereon, one several feet higher than the other. At one point on the farm the line crossed a private roadway running from one part to another of the Scoggins farm. At this point the lower wire was thirteen feet and three inches above the ground, and the upper wire was sixteen feet above the ground. The upper wire carried 6900 volts. The lower wire was grounded and presumably harmless.

At the time in question, a business firm known as the Morrison Tree Service, by agreement with the owner of the farm, was engaged in removing live trees from the

Scoggins farm for the purpose of transplanting them elsewhere. Appellee Clair was an employee of Morrison Tree Service. In the course of his employment, Clair undertook while standing on a truck belonging to his employer to raise the wires so that some trees loaded on the truck would pass under them. For such purpose he was using a wooden stick about five or six feet long, which had a fork at the end of it. In some manner which neither appellee nor his witnesses could explain, the wires slipped off the stick, and the live wire came into contact with appellee's body, causing him severe injuries.

The jury found that the maintenance of the wires at the heights above mentioned was negligence and a proximate cause of appellee's injuries, and found in appellee's favor on the issues of contributory negligence.

Appellant's contentions are presented under twenty-two points of error.

Appellant contends that the court should have instructed a verdict in its favor, or else should have rendered judgment in its favor notwithstanding the verdict, both on the ground that the evidence failed to show any negligence on appellant's part which was a proximate cause of the accident and appellee's resulting injuries, and on the ground that the evidence showed contributory negligence on appellee's part as a matter of law.

Before discussing these contentions, we shall discuss the applicability or not to this case of Article 1436, Revised Civil Statutes, which provides that certain electric lines shall be maintained at a height above the ground of at least twenty-two feet or be placed in underground pipes    Appellant argues that said statute does not apply to the lines of corporations organized under Art. 1528b, cited supra, because of Section 36 of the last cited statute, which reads as follows:

"This Act is complete in itself and shall be controlling. The provisions of any other law of this State, except as provided in this Act, shall not apply to a corporation organized, or in process of organization, under this Act."

█ It is the rule that "where a corporation is organized under a special law as distinguished from corporations organized under general law, the rules governing corporations organized under the general law have no application where the special statutes provide the methods for the regulation and control of said corporations." Lone Star Building & Loan Ass'n v. State, Tex. Civ.App., 153 S.W.2d 223, 224, writ dis. But such rule is not applicable to the situation before us because Article 1528b does not purport to regulate the height of transmission lines. In fact, it does not contain safety measures of any sort. It is not reasonable to suppose that the Legislature by the enactment of the above quoted Section 36 intended to exempt corporations organized under said statute from general police or safety regulations of the kind provided for in Article 1436.

The jury verdict convicts appellant of negligence in maintaining the wires at the heights above mentioned, in failing to inspect the line, and in having the poles too far apart, but the essence of each finding, in reality, is the negligence of appellant in permitting the wire to be too close to the ground at the place where the accident occurred.

Appellant vigorously argues that the evidence fails to show that its negligence, if any, was a proximate cause of the accident. It says that it could not reasonably have foreseen the accident which resulted in appellee's injuries.

█ San Antonio & A. P. R. Co. v. Behne, Tex.Com.App., 231 S.W. 354, is sufficient authority for the proposition that liability for a wrongful act is limited to such injuries as are proximately caused by such wrongful act, whether the act be wrongful per se, as for the failure to comply with a statutory duty, or wrongful at common law, as being a failure to exercise ordinary care. The rules for determining proximate cause are the same in either case. In either case foreseeability or anticipation of injury is a necessary element of proximate cause. As declared in Carey v. Pure Distributing Corporation, 133 Tex. 31, 124 S.W.2d 847, the evidence, to establish liability, must show that the negligence was

a proximate, not a remote, cause of the injury. It must show that the injury was the natural and probable result of the negli- gence. It must justify a finding that the negligent party ought to have foreseen the consequences of his negligence in the light of the attendant circumstances. But it is not required that the particular accident should have been foreseen. All that is required is that the injury be of such a gen- eral character as might reasonably have been anticipated, and that the injured party should be so situated with relation to the wrongful act that the injury to him or to one similarly situated might reasonably have been foreseen.

In our study of the case before us we have reviewed a number of cases where the questions of negligence, proximate cause and contributory negligence were related to the height at which a highly charged elec- tric wire was maintained above the ground. Brief reference will be made to some of them.

Card v. Wenatchee Valley Gas & Electric Co., 77 Wash. 564, 137 P. 1047. The wire was 17 feet above the ground. A farmer, in making repairs to an irrigation system, in- advertently brought an iron pipe 20 feet long in contact with the wire. It was held that the questions of negligence of the de- fendant and of contributory negligence of the deceased were for the jury.

Holden v. Cincinnati Gas & Electric Co., 57 Ohio App. 448, 14 N.E.2d 943. The wires were 20 feet above the ground. A workman trimming trees was using pruning shears with a handle 8 or 10 feet long. While standing on a ladder, his pruning shears came into contact with one of the wires. It was held that the evidence pre- sented questions for determination by the jury as to the negligence of the defendant and contributory negligence of the work- man.

Casualty Co. of America v. A. L. Swett Electric Light & Power Co., 230 N.Y. 199, 129 N.E. 653. The wires were from 13½ to 15 feet above the ground. A workman on a shovel with a boom on it some 30 feet long came in contact with the wires. The ques- tions of negligence and contributory neg- ligence were held to be for the jury.

Interstate Power Co. v. Thomas, 8 Cir., 51 F.2d 964, 84 A.L.R. 681. The wire was sixteen feet above the ground. A portion of a farm machine known as a separator came into contact with the wire. It was held that the trial court properly submitted to the jury the questions of negligence and contributory negligence. The facts of this case are somewhat similar to those in the case at bar with respect to the conduct of the injured party. In the cited case the injured party was trying to lift the wire over the separator by using a wooden lad- der when he received the electrical shock.

Jacques v. Dayton Power & Light Co., 80 Ohio App. 258, 74 N.E.2d 211. The wire was 22 feet above the ground. Defendant had agreed to maintain the wire at a mini- mum height of 25 feet. A truck with a crane on it came in contact with the wire. The trial court sustained demurrers to the petition. The pronouncements of the ap- pellate court, in reversing the judgment of dismissal, were to the effect that under the facts alleged there would have been jury questions as to negligence and contributory negligence.

Several of the reported cases involved contacts between hay derricks and over- head wires. It was held that jury questions were raised in Greenwood v. Eastern Ore- gon Light & Power Co., 67 Or. 433, 136 P. 336, where the wire was 30 feet above the ground, and in Shank v. Great Shoshone & Twin Falls Water Power Co., 9 Cir., 205 F. 833, where the wire was 27½ feet above the ground. It was held that there was no evidence to show negligence in Fairbairn v. American River Electric Co., 170 Cal. 115, 148 P. 788, where the wire was 27 feet above the ground. A similar holding was made in Reardon v. Florida West Coast Power Corporation, 97 Fla. 314, 120 So. 842, where a crane came in contact with a wire 24 feet above the ground. It was held as a matter of law that there was no negli- gence where a hay derrick came in con- tact with a wire 40 feet above the ground in Mayhew v. Yakima Power Co., 72 Wash. 431, 130 P. 485, and likewise in Bunten v. Eastern Minnesota Power Co., 178 Minn. 604, 228 N.W. 332, where a road building machine came in contact with a wire 25½ feet high. It was held that the question of

defendant's negligence was for the jury in Logan v. Empire Dist. Electric Co., 99 Kan. 381, 161 P. 659, L.R.A.1917E, 258, where a man was injured while trying to raise a wire over a store building that was being moved. The wire was 23 feet above the ground.

Any question as to whether plaintiff is to be treated as either a trespasser or a mere licensee appears to be removed by the decision in Texas-Louisiana Power Co. v. Webster, 127 Tex. 126, 91 S.W.2d 302. The same case is also authority for the proposition that Art. 1436 required appellant to maintain its line not less than 22 feet above the ground at the place where appellee was injured, and not merely along the highway.

"A company maintaining electrical wires over which a high voltage of electricity is conveyed, rendering them highly dangerous to others, is under the duty of using the necessary care and prudence at places where others may have the right to go, either for work, business, or pleasure, to prevent injury." West Texas Utilities Co. v. Renner, Tex.Com.App., 53 S.W.2d 451, 454.

The cases cited in appellant's brief are distinguishable from the case on appeal.

Brush Electric Light & Power Co. v. Lefevre, 93 Tex. 604, 57 S.W. 640, 49 L.R.A. 771, 77 Am.St.Rep. 898. For reasons set out in the opinion, the case did not turn on the height of the wires above the ground, but on the failure to insulate. The injured person went onto an awning, which was within 2 feet of the wire, and there came in contact with it. The decision is based on the theory that the awning was not a place that had been used by any person as a resort, either for business or for pleasure, and that the electric company had no reason to anticipate that someone would be injured by coming in contact with the exposed wire above the awning.

The question for decision in Burnett v. Fort Worth Light & Power Co., 102 Tex. 31, 112 S.W. 1040, 19 L.R.A.,N.S., 504, was whether contributory negligence would be a defense in a case where the defendant was guilty of negligence per se in the violation of a statute. The court held that it was.

McGinty v. Texas Power & Light Co., Tex.Civ.App., 71 S.W.2d 354, writ ref., involved a question not before us, to-wit, that of liability to a trespasser or a licensee.

Cloud v. Houston Lighting & Power Co., Tex.Civ.App., 199 S.W.2d 260, 261, writ ref. n. r. e., is cited in support of the contention that the evidence shows as a matter of law that appellee was guilty of contributory negligence. In the cited case the jury found the deceased guilty of contributory negligence. The verdict was upheld on appeal. The following declaration, taken from the opinion, is against appellant's contention:

"It has been generally held in the decisions of both the courts of this State and other jurisdictions, that 'The contributory negligence of one who receives an injurious shock or is killed by coming in contact with a sagging electric wire is generally a question for the determination of the jury.' 84 A.L.R. 694."

The facts in Howell v. Fort Worth Stockyards Co., 5 Cir., 108 F.2d 593, which did not involve injuries from electricity, are so different from those in the case before us that the opinion in the case is not helpful here.

After reviewing carefully the evidence in the record, and comparing the facts with those in many reported cases, it is our opinion that we would not be justified in holding as a matter of law that there is no evidence to support the jury finding that appellant's negligence was a proximate cause of appellee's injuries.

Nor would we be justified in holding that the evidence shows appellee guilty of contributory negligence as a matter of law. The evidence shows that appellee was exercising some degree of care for his safety. The case is a proper one for application of the rule thus stated in Texas & N. O. R. Co. v. Blake, Tex. Civ. App., 175 S.W.2d 683, 686:

" * * * where there is evidence showing some care and the question is one of the sufficiency of the care, a jury issue is presented."

Several points of error complain of the manner in which various issues were submitted to the jury. We have carefully con-

sidered the complaints, but do not find reversible error presented by any of them.

Complaint is also made because the court overruled certain special exceptions addressed to appellee's pleadings. The record as a whole does not show that appellant could have been prejudiced by such rulings.

It is shown without dispute that appellee received a substantial amount of money from the carrier of workmen's compensation insurance. The compensation carrier filed pleadings in the case, and was awarded the sum of $6409.63 out of the judgment recovered by appellee against appellant. Appellant complains of the submission of the twelfth special issue, which inquired if plaintiff necessarily incurred doctor and hospital charges for services rendered as a result of his injuries, and the thirteenth issue, inquiring as to the amount of such. The jury answered that he did, and found the amount thereof to be $950. The evidence amply shows that medical services were furnished appellee, that they were necessary, and that they were reasonably worth $950. Appellant's complaint seems to be that the medical bills were necessarily a part of the sum expended by the compensation carrier, for which it sought reimbursement under its subrogation rights, and that there is no evidence to show that appellee incurred liability for them. Appellant says that it is subjected to a double recovery for the item of medical expense. We do not find from the record as a whole that there has been a double recovery of the item of medical expense. Neither Issue No. 11, inquiring as to the amount of appellee's damages, nor the instruction accompanying it, included the element of medical expense. Issue No. 12 may not have been precisely correct, from a strictly technical standpoint, in inquiring as to the charges incurred by appellee, rather than as to those incurred and paid by the compensation carrier, but it is clear from the record as a whole that there was no double recovery, and it is clear that the compensation carrier is entitled to reimbursement for such expense. The error, if any, is not a reversible one, because appellant has suffered judgment for no more than it was liable under the law and the facts.

Appellant charges that the verdict of $25,950, including the medical bills, was excessive. Because of appellee's injuries, one of his arms was amputated just below the elbow. The other arm was injured to some extent, and appellee's physician testified that the percentage of loss of use to that hand was ten, or fifteen, or twenty per cent. Appellee was 48 years of age at the time of the trial. He was earning about $46 or $47 per week when he was injured. He had always done manual labor, and had no other way of earning a living. He had tried to work for Morrison Tree Service since the accident, but, to use his words, "He could not take it."

In our consideration of the appeal in Gillette Motor Transport Company v. Whitfield, Tex.Civ.App., 197 S.W.2d 157, opinion of Supreme Court in 145 Tex. 571, 200 S.W.2d 624, we studied the opinions in a great many reported cases, and, as pointed out in that opinion, found from the cited cases and discussions of text-writers that very few verdicts in excess of $30,000 had been upheld, and those only in cases where the injuries were most severe. We found only two or three Texas cases in which verdicts for more than $30,000 had been upheld. In our consideration of the present appeal, we have again reviewed many of those authorities, narrowing our search especially to cases where the only injury, or the principal injury, was the loss of an arm. For citations of many cases involving the type of injury we have here, see 25 C.J.S., Damages, § 198, page 946; 15 Am.Jur. 636; 46 A.L.R. 1244; and 102 A.L.R. 1143. Verdicts of $20,000 in cases involving injuries somewhat similar to those in the present case were held not to be excessive in Beaumont, S. L. & W. R. Co. v. Schmidt, Tex.Civ.App., 45 S.W.2d 734, affirmed, 123 Tex. 580, 72 S.W.2d 899; and in Texas & P. Ry. Co. v. Baldwin, Tex.Civ.App., 25 S.W.2d 969, affirmed, Tex.Com.App., 44 S.W.2d 909. The plaintiff recovered judgment for $20,000 for loss of an arm in Henwood v. Gary, Tex.Civ.App., 196 S.W.2d 958, writ ref. n. r. e., which was affirmed by this court, but the

appellant there did not raise the question of excessiveness of the verdict on appeal. In the great majority of the reported cases the verdicts in cases involving injuries similar to those in the present case have been much less than $25,000, although in two or three cases, of which Sprickerhoff v. Baltimore & O. R. Co., 323 Ill.App. 340, 55 N.E.2d 532, is an example, verdicts for even more than $25,000 for loss of an arm have been upheld. It will be seen from the authorities cited that verdicts as large as that in the present case have been held excessive in a number of instances.

 It is obvious from the authorities that appellate courts are reluctant to hold jury verdicts excessive, but it is clear that they have often recognized their duty to do so in a proper case. The courts have recognized the value of precedents with reference to the proper amount of damages to be awarded from particular injuries. 15 Am.Jur. 624. It is difficult, as many courts have said, to say in what amount a verdict is excessive. After carefully comparing the case before us with a large number of reported cases, we believe that we should suggest a remittitur of $5,000. Rule 440, Texas Rules of Civil Procedure.

If appellee will file a remittitur of $5,000 on or before the 20th day of January, 1949, the judgment of the trial court will be reformed accordingly, and as reformed will be affirmed; otherwise the judgment of the trial court will be reversed and the cause will be remanded. All parties may file motion for rehearing within fifteen days after the date we enter final judgment as above indicated.

Suggestion of remittitur accordingly this day entered.

### Supplemental Opinion

On January 7, 1949, we indicated by an opinion in writing that if appellee would file a remittitur of $5,000 on or before January 20, 1949, the judgment of the trial court would be reformed and as reformed would be affirmed, and that otherwise the judgment of the trial court would be reversed and the cause would be remanded. Appellee has filed the suggested remittitur of $5,000, protesting, however, that the judgment of the trial court was not exces-sive, and expressly reserving the right to file a motion for rehearing urging that we should not have suggested such remittitur.

Accordingly, as of this date, the judgment of the trial court is reformed by deducting the amount of $5,000 from the judgment recovered by appellee, and as so reformed is affirmed.

One-third of the cost of the appeal will be taxed against appellee Clair and two-thirds against appellant Tri-County Electric Cooperative, Inc.

Motion for rehearing may be filed by either party within fifteen days after this date.