02-09-425-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-09-00425-CV

 

 


 
 
 DENTON COUNTY ELECTRIC Cooperative, inc. d/b/a
 coserv electric
 
 
  
 
 
 APPELLANT AND
 APPELLEE
 
 
 
 
 V.
  
 
 
 
 
 NICOLE HACKETT, INDIVIDUALLY AND ON BEHALF OF
 OTHERS SIMILARLY SITUATED
 
 
  
 
 
 APPELLEE AND
 APPELLANT
 
 


 

------------

FROM THE 16TH
District Court OF DENTON COUNTY

------------

OPINION

----------

I.  Introduction

In
this interlocutory appeal,[1]
Appellant Denton County Electric Cooperative, Inc. d/b/a CoServ Electric (CoServ)
raises six issues, complaining that the trial court erred by certifying this
case as a class action.  We vacate the trial court’s class certification order
and remand the case to the trial court for further proceedings.[2]

II.  Factual and Procedural History

The underlying issue in this class
certification appeal involves the rights of members of an electric cooperative
and the statutory, fiduciary, and contractual duties, if any, owed by the
cooperative to its members.

A.  The
Parties

CoServ
is a member-owned, nonprofit electric cooperative formed under the Texas
Electric Cooperative Corporation Act (ECCA).  See Tex. Util. Code Ann. §§ 161.001–.254
(West 2007).  It has approximately 135,000 members, comprised of a diverse
socio-economic and demographic group of residential users as well as commercial
and public users.

Appellee
Nicole Hackett is a CoServ member.  Mark Glover and Janice Brady, also CoServ
members, are parties in the proceeding below.  Glover is a former CoServ
director, and Brady unsuccessfully campaigned in June 2008 for
election to CoServ’s board.

B.  The
Litigation

In
2008, a CoServ member complained about receiving a robo-call from Brady on his
unlisted phone number during Brady’s election campaign.  CoServ investigated,
and Brady admitted that she possessed members’ personal information but refused
to disclose her source.  In February 2009, Glover admitted that he had provided
Brady with the members’ personal information.

Brady
filed a class action suit against CoServ in February 2009, alleging, among
other things, that CoServ breached its fiduciary duty by undermining the
cooperative’s democratic process in its refusal to make its members’ contact
information available to nonincumbents running for election to CoServ’s board
of directors.  CoServ removed the suit to federal court[3]
and initiated the instant suit in state court against Glover, alleging that Glover
had released “CoServ’s confidential and proprietary information” in violation
of CoServ’s policy to protect its members’ personal information (Policy No.
310)[4]
and had made an unauthorized release of confidential real estate information.  CoServ’s
claims against Glover included breach of fiduciary duty, misappropriation of
trade secrets, and conversion of CoServ’s property, conspiracy to commit these
acts, and breach of his 2005 and 2008 directorship agreements.[5]

Glover
filed a counter-petition on his own behalf and on behalf of a class consisting
of “[a]ll current members of Denton County Electric Cooperative, Inc. entitled
to vote in board elections,” excluding the trial court judge, CoServ, and its
officers, employees, and directors other than Glover.[6] 
He alleged that CoServ failed to provide its members with open meetings, open
records, and fair voting for board elections by failing to disclose information
about CoServ to the members, and that CoServ had subverted the election process
in favor of incumbent directors.  Glover contended that the entrenched “old
guard” board was nearly the same as the board that had driven CoServ into
bankruptcy in 2002 and that “continue[d] to put management interests ahead of
the interests of the members to whom it owe[d] a fiduciary duty.”

Brady
filed a petition in intervention, seeking a declaratory judgment that CoServ had
a duty to provide challengers with all voter lists and other information
available to incumbent directors; that CoServ’s member contact information is
not confidential, a trade secret, or otherwise privileged from disclosure to
other members; that Policy No. 310 violates state law; that providing member
information to a person running for election to the board of directors conforms
with state law and does not violate a board member’s fiduciary duties; and that
CoServ member information is not CoServ’s property.

The
trial court denied CoServ’s motion to strike Brady’s petition in intervention
or, in the alternative, to stay Brady’s lawsuit based on Brady’s similar suit formerly
pending in the federal court.  CoServ subsequently filed an amended petition
against Glover and an original verified petition against Brady, alleging trade
secret misappropriation, conversion, and “conspiracy/aiding and abetting” by
Glover and Brady and breach of fiduciary duty and breach of contract by Glover.

Brady
filed an amended petition and Hackett combined her original petition in
intervention with Brady’s amended petition.  They referred to themselves
collectively as “Class Plaintiffs,” defined the voting subclass, listed their
common questions of law and fact for the class, and made claims for breach of
fiduciary duty, statutory duties, and contract, as well as for conversion,
oppression, and fraudulent concealment.

CoServ
complained that Hackett and Brady lacked standing and argued that Brady,
Hackett, and Glover were inadequate class representatives, that there were
irreconcilable conflicts among the members of the putative class, that a class
action was not the superior method of adjudicating the dispute, and that common
questions did not predominate over individual issues.

Brady
and Hackett filed Brady’s second amended petition and Hackett’s first amended
petition in intervention on August 31, 2009, the same day that the trial court
began the five-day hearing on class certification.  Their new petitions omitted
the claim for breach of statutory duties.  Nonetheless, on November 6, 2009, the
trial court signed an order certifying the class under rule of civil procedure
42(b)(2) that included the statutory duties claim as an issue.

The
order set out the following:

IT IS ORDERED, ADJUDGED AND DECREED that the Voting
Subclass is comprised of:

          All persons who or entities that currently are
members of Denton County Electric Cooperative, Inc. d/b/a CoServ Electric
(“CoServ”); but excluding CoServ, any and all CoServ affiliates, officers,
directors, and employees of CoServ, members of this Court, the attorneys in
this case, and members of the immediate families of any of the excluded
individuals.

          In determining to certify the Voting Subclass,
the Court makes the following findings:

1.       The Voting Subclass is comprised of
approximately 135,000 members.  Joinder of each of them individually is
impracticable.

2.       There are multiple questions of law and fact
that are common to the Voting Subclass.  Some of them include:

·       
Whether
the CoServ bylaws and/or policies relating to governance, director elections,
and voting constitute enforceable contracts between CoServ and the Voting
Subclass;

·       
Whether
CoServ materially breached its contractual relationship(s) relating to
governance, director elections, and voting with the Voting Subclass;

·       
Whether
CoServ is a fiduciary of the Voting Subclass;

·       
Whether
CoServ breached its fiduciary duty to the Voting Subclass;

·       
Whether
CoServ has a statutory duty to the Voting Subclass vis-à-vis governance,
director elections, and voting procedures;

·       
Whether
CoServ breached its statutory duty to the Voting Subclass in connection with
the cooperative’s governance, director elections, and voting procedures;

·       
Whether
CoServ’s Policy 310 as currently interpreted by CoServ violates voting
sub-class members’ rights [of] access to members’ information for use in
connection with CoServ’s Board of Director Elections and other proper
cooperative purposes;

·       
Whether
CoServ’s policies and practices fall short of providing the access to its books
and records to which the Voting Subclass members are entitled;

·       
Whether
CoServ’s practice of providing vote tallies to management and board members
during CoServ Board Elections violates CoServ’s obligation to maintain
democratic control over the cooperative;

·       
Whether
CoServ violated its own policies regarding voting, balloting, vote counting,
etc. in a manner that violates its obligation to provide democratic operation
of CoServ to its members;

·       
Whether
CoServ’s practice of allowing unequal access to member information violates its
obligation to provide democratic operation of CoServ to its members;

·       
Whether
the CoServ election practices are fair and/or democratic;

·       
Whether
the CoServ election policies as written and/or applied are fair and/or
democratic;

·       
Whether
CoServ’s polices as written and/or its practices of interim appointment of
directors are fair and/or democratic;

·       
Whether
CoServ’s policies as written and/or its practices wrongfully delegate decision
making and/or control of CoServ to management rather than the democratically
elected Board of Directors;

·       
Whether
the Voting Subclass is entitled to a judicial determination of the legal and
equitable obligations owed by CoServ to its members as alleged.

. . . . 

4.       The claims of Nicole Hackett are typical of
those of the Voting Subclass.  Nicole Hackett is a current CoServ member and
has standing.  All class members of the Voting Subclass are CoServ members and
thus are impacted if CoServ does not operate democratically or its election
policies and/or practices are unfair to its members.  Any claims related to
these issues are typical within the Voting Subclass.  There are no conflicts
between Nicole Hackett and the other members of the Voting Subclass.

5.       Nicole Hackett is an adequate Voting Subclass
representative.  She is a CoServ member who has demonstrated that she will
represent the Voting Subclass members’ interests and advocate for the best
interests of the class.  She understands and accepts her fiduciary role as to
the class, as well as her proper relationship with class counsel.  She has
demonstrated an adequate understanding of the Voting Subclass claims.  She will
(and has) participated in settlement discussion, and attended previously court
ordered mediation.  She has retained adequate class counsel.

The
order also set out the declarations sought by the class representative before
stating that the entitlement to the declaratory, injunctive, and other relief
sought by the Voting Subclass could be determined by applying the law to the
facts common to the entire class, including the following:

As described more specifically below, the Class
Representative has alleged claims seeking declaratory, injunctive and other relief
regarding certain rights of members to member contact information in the
context of cooperative director elections and other information of the
cooperative regarding its governance and business practices.

 . . . .

The Class Representative seeks at least the following
declarations regarding CoServ’s governance practices on behalf of the voting subclass:

(1) CoServ’s Policy 310 as currently interpreted by
CoServ violates Voting Subclass members’ rights to access to members[’]
information for use in connection with Coserv’s Board of Director Elections and
other proper cooperative purposes;

(2) CoServ’s policies and practices fall short of the
access to its books and records to which the Voting Subclass members are
entitled;

. . . . 

(5) CoServ’s practice of allowing unequal access to
member information violates its obligation to provide democratic operation of
CoServ to its members;

. . . .

(19) CoServ has a statutory duty to the Voting Subclass
vis-à-vis governance, director elections, and voting procedures; and

(20) CoServ breached its statutory duty to the Voting
Subclass vis-à-vis governance, director elections, and voting procedures.

The
trial court indicated in its order that it would determine whether Texas
corporate governance statutes and common law applied to an entity formed under
chapter 161 of the utilities code.[7]

Hackett
filed a second amended petition in intervention after the trial court signed
the certification order and one day before CoServ filed its notice of this
interlocutory appeal.  In her new petition, which she filed individually and as
class representative of the Voting Subclass, Hackett set out claims for
declaratory and injunctive relief, breach of fiduciary duty, breach of contract,
and fraudulent concealment.  She also renewed the claim for breach of statutory
duties and sought attorney’s fees.[8] 
Hackett moved for approval of the class notice, which the trial court granted.  The
common issues set out in the class notice parallel those included in the class
certification order.  CoServ then appealed the trial court’s order on Hackett’s
motion for class certification and trial plan.

III.  Class Certification

In
its fourth issue, CoServ contends that the trial court misunderstood or failed
to consider the law underlying the substantive claims made by Hackett and
therefore granted class certification based on faulty assumptions.  This issue is
dispositive.  However, before we may reach it, we must determine whether CoServ
is correct in the part of its third issue in which it argues that the trial
court’s order and trial plan do not satisfy Southwestern Refining Co. v.
Bernal, 22 S.W.3d 425 (Tex. 2000), because the order recites proposed
declarations that are not supported by the pleadings on some of Hackett’s
substantive claims.

A. 
Live Pleading

At
the hearing on the proposed class certification order, two months after the
class certification hearing, CoServ raised the same complaint that it does on
appeal, that “many of [the] proposed declarations [in the certification order]
were not supported by the pleadings on file at the time.  For example,
Declarations 7–8, 11, and 13–20 are not supported by the pleadings that were on
file at the time of the class hearing.”  Here, we are concerned only with
Declarations 19 and 20, as set out above in our recitation of the facts.

As a
general rule, an amended pleading supersedes the original pleading.  See
Conn v. Rhodes, No. 02-08-00420-CV, 2009 WL 2579577, at *3 (Tex.
App.—Fort Worth Aug. 20, 2009, no pet.) (mem. op.) (citing Tex. R. Civ. P. 65,
and Sheerin v. Exxon Corp., 923 S.W.2d 52, 55 (Tex. App.—Houston [1st Dist.]
1995, no writ) (op. on reh’g)).  Under this rule, a party may voluntarily
dismiss claims by omitting them from the amended pleading.  Id.; see
FKM P’ship, Ltd. v. Bd. of Regents of Univ. of Houston Sys., 255 S.W.3d 619,
634 (Tex. 2008) (noting that an amended pleading effects a voluntary dismissal
of claims not included in the amended pleading).  And, generally, under civil
practice and remedies code section 51.014, we consider the live pleading on
file at the time the trial court entered its appealable interlocutory order.  See
Tex. Civ. Prac. & Rem. Code Ann. § 51.014; City of Arlington v.
Randall, 301 S.W.3d 896, 906 (Tex. App.—Fort Worth 2009, pet. denied)
(setting out claims from the live pleading on file when the trial court denied
the city’s plea to the jurisdiction); see also Presbyterian Cmty. Hosp. of
Denton v. Smith, 314 S.W.3d 508, 511 (Tex. App.—Fort Worth 2010, no pet.)
(setting out claims from live pleading at the time of the second hearing on the
hospital’s motion to dismiss).

On
August 31, 2009, the first day of the class certification hearing, Brady and
Hackett filed Brady’s second amended petition and Hackett’s first amended
petition in intervention.  This document constituted the live pleading when the
trial court issued its class certification order.  The pleading did not include
a specific claim for breach of statutory duties, unlike the immediately
preceding pleading filed in July 2009.  However, the new pleading still set
forth the facts that are the basis of the breach of statutory duties claim, and
it is clear from the record of the five-day hearing on Brady and Hackett’s
class certification motion that breach of statutory duties was an issue upon
which they sought relief—the equivalent of being tried “by consent.”  See,
e.g., Tex. R. Civ. P. 67 (stating that when issues not raised by the
pleadings are tried by express or implied consent of the parties, they shall be
treated in all respects as if they had been raised by the pleadings). 
Therefore, we overrule this portion of CoServ’s third issue.[9]

B. 
Substantive Law

In
its fourth issue, CoServ specifically complains that the trial court improperly
certified the class based on a significant misunderstanding of the law because
it owes no fiduciary duty to its members; it has no contract with its members
via its bylaws; oppression is not a viable claim; and it owes no statutory
duties to its members under the ECCA.  Hackett responds that CoServ owes
contractual, statutory, and fiduciary duties to its members and that she has
abandoned her claim for oppression.

1.  Standard
of Review

Rule
of civil procedure 42 governs class actions in Texas.  See Tex. R. Civ.
P. 42.          We review the trial court’s certification for an abuse of
discretion.  Sw. Bell Tel. Co. v. Marketing on Hold, Inc., 308 S.W.3d
909, 915 (Tex. 2010).  However, we do so “without indulging every presumption
in favor of the trial court’s decision.”  Stonebridge Life Ins. v. Pitts,
236 S.W.3d 201, 204–05 (Tex. 2007) (citing Henry Schein, Inc. v. Stromboe,
102 S.W.3d 675, 691 (Tex. 2002), and Bernal, 22 S.W.3d at 434–35, 439). 
“Actual conformance with Rule 42 is indispensable, and compliance with the rule
must be demonstrated, not presumed.”  Id. at 205.

Prior
to ruling on a motion for class certification, courts must perform a “rigorous
analysis” to determine whether all prerequisites to certification have been met,
and a cautious approach to class certification is essential.  Bernal, 22
S.W.3d at 435; see also Compaq Computer Corp. v. Lapray, 135
S.W.3d 657, 671 (Tex. 2004) (applying Bernal to rule 42(b)(2)
certifications).  It is improper to certify a class without knowing how the
claims can and will likely be tried, and to make a proper analysis, the court
must understand the claims, defenses, relevant facts and applicable substantive
law to make a meaningful determination of the certification issues.  Bernal,
22 S.W.3d at 435, 437 (explaining that a class action is a procedural device
intended to advance judicial economy by trying claims together that lend
themselves to collective treatment and is not meant to alter the parties’
burdens of proof, right to a jury trial, or the substantive prerequisites to
recovery); see also Exxon Mobil Corp. v. Gill, 299 S.W.3d 124, 126 (Tex.
2009) (stating that the substantive law must be taken into consideration in
determining whether the purported class can meet the certification
prerequisites under rule 42); Union Pac. Res. Grp. v. Hankins, 111
S.W.3d 69, 72–73 (Tex. 2003) (stating that “[b]y choosing to delay analysis of Yzaguirre
until ‘another stage of litigation,’ the court of appeals ignored applicable
substantive law crucial to understanding the claims and defenses,” and
requiring that the substantive law in Yzaguirre be taken into
consideration “in determining whether the purported class can meet the
certification prerequisites”).  When a class has been certified based on a
significant misunderstanding of the law, remand to the trial court is
appropriate so that it may determine the effect on the requirements for class
certification.  Gill, 299 S.W.3d at 129 (vacating the trial court’s
class certification order and remanding the case to the trial court for further
proceedings).

2. Statutory
and Contractual Duty Claims

Hackett
argues that CoServ owes its members statutory duties under sections 22.152–.154,
22.158, and 22.351 of the business organizations code and sections 161.070 and
161.072 of the utilities code and contractual duties under CoServ’s bylaws.  The
first portions of these claims present a question of statutory interpretation.

When
a general statutory provision conflicts with a special statutory provision,
both provisions shall be construed, if possible, to give effect to both; but if
the conflict is irreconcilable, the special provision prevails absent certain
exceptions.  Chesser v. LifeCare Mgmt. Servs., L.L.C., 356 S.W.3d 613, 620
(Tex. App.—Fort Worth 2011, no pet.); see also Tex. Gov’t Code Ann.
§ 311.026(b) (West 2005) (stating that the special provision prevails as
an exception to the general provision unless the general provision is the later
enactment and the manifest intent is that the general provision prevail).

We
note initially that section 2.010 of the business organizations code states that
“[a] nonprofit corporation may not be organized or registered under this code
to conduct its affairs in this state to:  (1) engage in or operate as a . . . rural
electric cooperative corporation.”  Tex. Bus. Orgs. Code Ann. § 2.010(1) (West
2011) (setting out a list of cooperative associations); see also Tex.
Att’y Gen. Op. No. DM-479 (1998), available at 1998 WL 346647, at *2
(noting that since 1959, the Non-Profit Corporation Act has expressly excluded
from its application cooperatives organized for particular purposes, including
rural electric cooperatives, because each one of the excluded corporations is
provided for and may be incorporated under a specific statute).

The
ECCA specifically governs electric cooperatives.  See Tex. Util. Code
Ann. §§ 161.001–.254.  Section 161.005 provides, “This chapter is complete
in itself and is controlling,” and the powers of electric cooperatives are
solely derived from and measured by the ECCA.  Id. § 161.005; Hilco
Elec. Co-op., Inc. v. Midlothian Butane Gas Co., 111 S.W.3d 75, 77–81 (Tex.
2003) (reviewing electric cooperatives’ purposes and powers under the ECCA); see
also Mariko Kikawa, Hilco Electric Cooperative v. Midlothian Butane Gas
Co.: A Look at Electric Cooperatives in Texas, 57 Baylor L. Rev. 461, 465
& n.14 (2005) (noting that unlike the statutory provisions governing other
cooperatives in Texas, the ECCA does not contain supplemental provisions
integrating sections of the Non-Profit Corporation Act or general corporation
law to fill any gaps in the statute); cf. Tex. Agric. Code Ann.
§ 51.002 (West 2004) (stating that the state’s general corporation laws
govern agricultural cooperative societies unless those laws conflict with
chapter 51 of the agriculture code), § 52.004 (West 2004) (stating same with
regard to cooperative marketing associations), § 55.003 (West 2004)
(stating that in addition to the requirements under the state’s general
corporation laws, the articles of incorporation of a cooperative credit
association must state that the association may not obtain loans for, make
loans to, purchase notes from, or discount notes for a person who is not a
member of the association); Tex. Health & Safety Code Ann. § 301.003
(West 2010) (stating that eligible institutions creating a hospital laundry
cooperative association may file articles of incorporation under the state’s general
corporation law), § 301.033 (West 2010) (stating that eligible institutions
creating a miscellaneous health-related cooperative association may prepare and
file articles of incorporation under the state’s general corporation law); Tex.
Util. Code Ann. § 162.079 (West 2007) (stating that the Non-Profit Corporation
Act applies to a telephone cooperative in the same manner as if the cooperative
had been formed under the Texas Non-Profit Corporation Act).

The
legislature passed the ECCA in 1937 to provide for the organization of
cooperative, nonprofit membership corporations for the purpose of engaging in
rural electrification.  Act of Mar. 30, 1937, 45th Leg., R.S., ch. 86, § 3,
1937 Tex. Gen. Laws 161, 161–62, repealed and recodified by Act of May 8,
1997, 75th Leg., R.S., ch. 166, §§ 1, 9–10, 1997 Tex. Gen. Laws 713, 947–57,
1018 (current version at Tex. Util. Code Ann. §§ 161.001–.254); Tri-Cnty.
Elec. Co-op. v. Clair, 217 S.W.2d 681, 682 (Tex. Civ. App.—Fort Worth 1949,
writ ref’d n.r.e.).  The ECCA was recodified in 1997 without any substantive changes. 
See Act of May 8, 1997, 75th Leg., R.S., ch. 166, § 10, 1997 Tex. Gen.
Laws 713, 1018.

The
ECCA, however, does not always control.  See Tri-Cnty. Elec., 217
S.W.2d at 683.  In 1949, in a personal injury suit involving nonfatal
electrical-burn injuries, we held that former article 1528b, section 36 of the
ECCA[10]
did not control because it did not purport to regulate the height of
transmission lines or contain safety measures of any sort.  Id.  We
stated, “It is not reasonable to suppose that the Legislature by the enactment
of the above quoted Section 36 intended to exempt corporations organized under
said statute from general police or safety regulations of the kind provided for”
in article 1436a, section 1.[11] 
Id.  But see Rothwell v. Lone Wolf Elec. Co-op., Inc., 444 S.W.2d
197, 198–99 (Tex. Civ. App.—Eastland 1969, writ ref’d n.r.e.) (stating that the
business corporations act and its amendments were inapplicable to the ECCA with
regard to breach of employment contract issue because the ECCA had a specific
provision addressing the issue and the other act expressly declared that it did
not apply to co-ops and provided that it would apply only if the special
statute applying to the excepted domestic corporations—like co-ops—contained no
provisions with regard to some of the matters provided for in the business
corporations act).

Unlike
Tri-County Electric, this is not a personal injury suit involving
standards of construction, operation, and maintenance of electric lines.  Cf.
217 S.W.2d at 683.  Further, two of the business organizations code provisions
that Hackett lists to support her argument are duplicated in the ECCA.  That is,
Hackett argues that CoServ owes statutory duties to its members under the
following sections:  section 22.152, which states that members of a nonprofit
corporation are not personally liable for a debt, liability, or obligation of
the corporation; (2) section 22.153, which provides for an annual meeting; (3)
section 22.154, which provides legal recourse for a member if the nonprofit
corporation’s board of directors fails to call the annual meeting of members
when required; (4) section 22.158, which provides for the preparation and
inspection of a list of voting members, including the voting members’
addresses; and (5) section 22.351, which provides for a member’s right to
inspect books and records.  See Tex. Bus. Orgs. Code Ann. §§
22.152–.154, .158, .351.

However,
utilities code section 161.060 provides that a member is not liable for a debt
of an electric cooperative except for (1) a debt contracted between the member
and the cooperative or (2) an amount not to exceed the unpaid amount of the
member’s membership fee.  Compare Tex. Bus. Orgs. Code Ann. § 22.152, with
Tex. Util. Code Ann. § 161.060.  And utilities code section 161.067
provides for an annual meeting.  Compare Tex. Bus. Orgs. Code Ann. §
22.153, with Tex. Util. Code Ann. § 161.067 (stating where and when an
electric cooperative will hold its meeting and setting out who may call a
special meeting of the members).  In light of utilities code section 161.005, which
provides that the ECCA is complete in itself and controlling, and because the
utilities code contains more specific provisions addressing the same items in
business organizations code sections 22.152 and 22.153, the utilities code provisions
must control.  See Tex. Gov’t Code Ann. § 311.026(b).  Therefore, neither
Hackett nor the purported class has a substantive claim based on business
organizations code sections 22.152 and 22.153.  We sustain this portion of
CoServ’s fourth issue.

Further,
nothing we have reviewed so far has indicated that the legislature meant to
incorporate general provisions of the business organizations code into the
ECCA.  Cf. Tex. Agric. Code Ann. §§ 51.002, 52.004, 55.003; Tex.
Health & Safety Code Ann. §§ 301.003, 301.033; Tex. Util. Code Ann. §
162.079.  Therefore, we will next review the nature of the electric cooperative
and the ECCA to determine whether the exclusion of business organizations code
sections 22.154, 22.158, and 22.351 from the ECCA was intentional.

a.   
 Electric Cooperatives

In a
1998 letter ruling, the attorney general reviewed what constitutes a
“cooperative” and described it as “a corporation or association organized for
the purpose of providing economic services, without gain to itself, to
shareholders or members who own and control it,” with the defining
characteristic of being obliged to distribute net proceeds to its members in
the form of patronage refunds or dividends in amounts determined by the use
made by the members of the association facilities.  Tex. Att’y Gen. Op. No.
DM-479 (1998), available at 1998 WL 346647, at *1 (citing United
Grocers, Ltd. v. United States, 186 F. Supp. 724, 733 (N.D. Ca. 1960), aff’d,
308 F.2d 634 (9th Cir. 1962), and Roswell Magill & Allen H. Merrill, The
Taxable Income of Cooperatives, 49 Mich. L. Rev. 169, 173–74 (1950)).  Additional
characteristics that distinguish cooperatives from other business structures
include “the features of democratic control and voting; distribution of
economic benefits on an equal basis or proportionate use made of association
facilities; limited return on capital; and of transaction of business with
their own members.”  Id.; see also United States v. Miss.
Chem. Corp., 405 U.S. 298, 311, 92 S. Ct. 908, 915 (1972) (observing that
“the essential nature of cooperatives and corporations differs”).

Cooperatives
operate on different foundational principles than corporations.  See Miss.
Chem., 405 U.S. 298, 308 n.14, 92 S. Ct. at 914 n.14 (“Cooperatives and corporations
operate on different principles.  Whereas the corporate structure separates
control and management, the essence of a cooperative requires that these
functions be integrated.”); see also Steve F. Brault, Equity
Financing of Cooperatives:  Advantageous Federal Securities Law and Tax
Treatment, 21 Willamette L. Rev. 225, 226 (1985).  Specifically, these
principles, called the “Rochdale Principles,” are the principles that “have
guided the formation of cooperative businesses throughout the world and serve
as the essential identifying characteristics of cooperative business
organizations.”  Brault, 21 Willamette L. Rev. at 226.  The Rochdale Principles
are open membership; democratic control; limited return on member capital; use
of new savings for development, common services, and distribution of patronage
refunds; cooperative education; and cooperation among cooperatives.[12]
 Id.

In
comparing cooperatives to corporations,

consider the structure of a typical
business corporation.

Persons wishing to become equity
participants in a corporation buy stock. This stock gives the owners the right
to elect directors, generally on the basis of the number of shares owned.  Share
ownership also entitles the equity participants to share in earnings on a pro rata
basis.  Absent agreement among the shareholders to the contrary, shares are
freely transferable, and capable of appreciating in value.  These are, in fact,
the essential attributes of corporate “stock” identified by the United States
Supreme Court in the context of determining when “stock” will be considered to
be a security.

Cooperatives do not generally share
these characteristics. First, cooperatives may or may not issue “stock” to
their members; equity participation in a co-op can take many different forms.  In
addition, while members may be required to buy some sort of “membership
interest” as a condition to joining the cooperative, the majority of a
traditional cooperative’s equity comes from retained patronage dividends rather
than external “investment.”  Finally, even where “stock” is purchased, its
function is typically only to give members the right to use the co-op’s
services and facilities.  It does not determine voting rights or the right to
share in profits from the venture, if any.  Cooperatives generally operate on a
one-vote per member basis, regardless of the relative investment of the members
or the number of shares or membership interests owned.  Similarly, although
members generally have equal voting rights in the cooperative, member income is
based on patronage rather than equity ownership.  Distributions upon
dissolution are also based on patronage rather than the members’ proportionate
capital investment.  In addition, membership rights, however denominated, are
not usually freely transferable and typically do not have the potential for
appreciation.

In
evaluating the characteristics of a cooperative, it has been said that:

Any definition of a cooperative must account for four
operationally-unique cooperative principles.  First, cooperatives are owned and
democratically controlled by the producers who use their services.  Second, the
cooperative distributes its net income to producers in proportion to their use
of the cooperative.  Third, returns on ownership capital are limited.  Fourth,
producers who use the cooperative substantially finance its operation.

This litany of attributes makes for
ready comparison with the traditional, for-profit corporate form.  In the case
of a corporation, shareholder-owners generally have one vote per share, meaning
that voting rights are held proportionately to each shareholder’s equity
investment in the enterprise. In addition, a shareholder’s equity interest is
typically acquired through investment in the stock itself, although the stock
may (and hopefully will) appreciate in value. The investment may be recouped
through dividends or upon sale of the appreciated stock on the open market.  Most
stock is not redeemable, nor is redemption the typical way in which the value
of an investment in corporate stock is realized.  In general, therefore, a
stockholder’s income is generally based on stock ownership, as is the
stockholder’s right to participate in distributions upon dissolution and
liquidation.  The shares are generally freely transferable, unless the
shareholders have agreed to limit this right.  Moreover, there is generally no
requirement that the owners of a business corporation “use” the corporation’s
facilities or products.

Thus, none of the essential attributes
of the cooperative form of business fit the traditional corporate model.  This
fact explains why some commentators have complained that “viewing a
co-operative as a corporation distorts its true nature because an ordinary
corporation may exist and operate from its own detached power base whereas a
co-operative cannot exist apart from a body of people who are its members.”

Carol
R. Goforth, Application of the Federal Securities Laws to Equity Interests
in Traditional and Value-Added Agricultural Cooperatives, 6 Drake J. Agric.
L. 31, 39–41 (2001) (citations omitted).

b.  
 The ECCA

The
ECCA defines a “member” as “a person admitted to membership in the electric
cooperative as provided by Section 161.065.”  Tex. Util. Code Ann. § 161.002(5);
see also Rep. Jim Cooper, Electric Co-operatives:  From New Deal to
Bad Deal? 45 Harv. J. on Legis. 335, 337 (2008) (“Electric co-ops are owned
by their customers, who are called ‘members’ of the co-op due to their dual
role as customer/owner.”).  Section 161.065 states that a person is eligible to
become a member if he or she has a dwelling, structure, apparatus, or point of
delivery at which he or she does not receive central station service from
another source and in an area where the cooperative is authorized to provide
electric energy, and he or she (1) uses or agrees to use electric energy or the
facilities, supplies, equipment, or services furnished by the cooperative at
the dwelling, structure, apparatus, or point of delivery, or (2) is an
incorporator of the cooperative.  Tex. Util. Code Ann. § 161.065(a). 
Membership in an electric cooperative is not transferable, and a membership
certificate in an electric cooperative is exempt from the Texas Blue Sky Law.[13] 
Id. §§ 161.063, .065(c).

The
ECCA provides that an electric cooperative shall operate without profit to its
members, but it also contains a statutory distribution scheme to return revenue
to members.  Id. § 161.059(a), (c)–(d).  The cooperative’s bylaws
regulate and manage its affairs.  See id. § 161.064 (stating
that the bylaws may contain any provision for the regulation and management of
the cooperative’s affairs that is consistent with the articles of
incorporation).  And its business and affairs are managed by a board of
directors, each of whom “must be a member of the cooperative.”  Id.
§ 161.071(a).  Each member present at a meeting of the membership of an
electric cooperative is entitled to one vote on each matter submitted to a vote
at the meeting, although the bylaws may provide for voting by proxy or by
mail.  Id. § 161.070.  Although there is very little case law
interpreting chapter 161, it appears that its emphasis—as with all
cooperatives—lies in member participation and ownership.

c.   
Comparison

In
comparison to the ECCA, the business organizations code does not require a
nonprofit’s board of directors to be composed of the nonprofit’s members.  Compare
Tex. Bus. Orgs. Code Ann. § 22.203 (stating that a director is not required to
be a member unless the certificate of formation or a bylaw imposes that
requirement), with Tex. Util. Code Ann. § 161.071(a) (stating that each
director must be a member of the cooperative).  The business organizations code
also sets out procedures to amend the certificate of formation of a corporation
“with members having voting rights” and of one that has no members or has no
members with voting rights, Tex. Bus. Orgs. Code Ann. §§ 22.105, .107, and it provides
that each member, regardless of class, is entitled to one vote on each matter
submitted to a vote of the corporation’s members, “except to the extent that
the voting rights of members of a class are limited, enlarged, or denied by the
certificate of formation or bylaws of the corporation,” unlike the one-member,
one-vote provision in the ECCA.  Compare id. § 22.160(a), with
Tex. Util. Code Ann. § 161.070.

There
are two ECCA provisions that specifically incorporate portions of the business
organizations code.  See Tex. Util. Code Ann. §§ 161.078, .121(10).  In
section 161.078, the ECCA specifically incorporates the provisions of the
business organizations code pertaining to mandatory and permissive
indemnification, advancement of expenses, and liability insurance.  See id.
§ 161.078 (incorporating former article 1396–2.22A of the revised civil
statutes, now found in business organizations code sections 8.051–.052,
8.101–.105, and .151–.152, to provide that an electric cooperative may
indemnify and provide indemnity insurance in the same manner and to the same
extent as a nonprofit corporation under the business organizations code).  In
section 161.121(10), the ECCA specifically incorporates the provisions of the
Non-Profit Corporation Act pertaining to its general powers to exercise “any
other power, for which the cooperative is organized, including other or
additional purposes that benefit members and nonmembers, either directly or
through affiliates, described in Section A, Article 2.01, Texas Non-Profit
Corporation Act (Article 1396–2.01, Vernon’s Texas Civil Statutes).”  Id.
§ 161.121(10) (incorporating provisions now found in business organizations
code section 22.051); Hilco Elec. Co-op., 111 S.W.3d at 77 (stating that
the ECCA entitles an electric cooperative to create and own a for-profit
company “if necessary, convenient, or appropriate to effectuate the [ECCA’s]
permitted purposes:  rural electrification or purposes like those listed in
article 1396–2.01(A) of the Non-Profit [Corporation] Act”).

Based
on the nature of the electric cooperative and the specific differences set out
in the ECCA as compared to the provisions of the business organizations code,
as well as the fact that the legislature deliberately chose to incorporate only
two specific provisions of the business organizations code into the ECCA, we
conclude that the legislature did not intend to provide electric cooperative
members with the same rights set out in business organizations code sections
22.154, 22.158, and 22.351.  Compare Tex. Util. Code Ann. §§ 161.078,
161.121(10) (deliberately incorporating specific provisions of business
organizations code), with Tex. Agric. Code Ann. §§ 51.002, 52.004, 55.003;
Tex. Health & Safety Code Ann. §§ 301.003, .033; Tex. Util. Code Ann. § 162.079;
see also First Fed. Sav. & Loan Ass’n of Twin Falls v. E. End Mut. Elec.
Co., 735 P.2d 1073, 1077–78 (Idaho Ct. App. 1987) (stating that “[o]ur
Legislature evidently has determined that this type of service provider [an
unregulated, private, nonprofit electric cooperative], which typically serves a
limited group of customers and is owned by the customers themselves, merits a
lesser degree of public intrusion”); Hunerjager v. Dixie Elec. Membership
Corp., 434 So.2d 590, 591 (La. Ct. App.) (concluding that member-plaintiffs
had no statutory right to examine electric cooperative’s records because
although there were specific provisions for records examinations in the
Business Corporation Law and Non-Profit Corporation Law, there were no sections
in the Electric Cooperative Law regarding the examination of records by the
membership and the Electric Cooperative Law did not provide that the business
or nonprofit corporate law was supplementary to its provisions), writ denied,
440 So.2d 149 (La. 1983).  Rectifying this situation is a task best suited for
the legislature.  Therefore, we sustain the portion of CoServ’s fourth issue
pertaining to the breach of statutory duties claim under business organizations
code sections 22.154, 22.158, and 22.351.

d.  
Statutory Duties under the ECCA

Hackett
also contends that CoServ owes and breached statutory duties to its members
under utilities code sections 161.070 and 161.072.  CoServ argues that the ECCA
does not confer an express private right of action on Hackett, giving her no standing
to sue under the ECCA.

Standing
is a prerequisite to suit before rule 42’s adequacy requirement may be
considered.  See M.D. Anderson Cancer Ctr. v. Novak, 52 S.W.3d
704, 706, 711 (Tex. 2001) (stating that a named plaintiff’s lack of individual
standing at the time suit is filed deprives the court of subject matter
jurisdiction over the plaintiff’s individual claims and claims on behalf of the
class); see also DaimlerChrysler Corp. v. Inman, 252 S.W.3d 299, 304–05
(Tex. 2008) (“For standing, a plaintiff must be personally aggrieved; his
alleged injury must be concrete and particularized, actual or imminent, not
hypothetical.”).  A plaintiff has standing to bring suit if she has a legal
right that has been breached.  Nobles v. Marcus, 533 S.W.2d 923, 927
(Tex. 1976); McDaniel v. Town of Double Oak, No. 02-10-00452-CV, 2012 WL
662367, at *3 (Tex. App.—Fort Worth Mar. 1, 2012, no pet. h.) (mem. op.). 
Without a breach of a legal right belonging to the plaintiff, no cause of
action arises or can accrue to the plaintiff’s benefit.  Nobles, 533
S.W.2d at 927.

We
start with the plain language of the statutes in construing them.  Exxon
Corp. v. Emerald Oil & Gas Co., L.C., 331 S.W.3d 419, 422 (Tex. 2010) (op.
on reh’g) (concluding that natural resources code section 85.321, entitled
“suit for damages,” which provides that a party “may sue for and recover
damages and have any other relief to which he may be entitled at law or in
equity,” creates a private cause of action for damages resulting from statutory
violations).  “When a private cause of action is alleged to derive from a
constitutional or statutory provision, our duty is to ascertain the drafters’
intent.”  Brown v. De La Cruz, 156 S.W.3d 560, 563 (Tex. 2004) (citing Rocor
Int’l, Inc. v. Nat’l Union Fire Ins. Co. of Pittsburgh, PA, 77 S.W.3d 253,
260 (Tex. 2002)).

Section
161.070, entitled “Voting by Members,” states, “Each member present at a
meeting of the members is entitled to one vote on each matter submitted to a
vote at the meeting.  The bylaws may provide for voting by proxy or by mail.” 
Tex. Util. Code Ann. § 161.070 (emphasis added).  Section 161.072, entitled
“Election of Directors; Vacancies,” provides as follows:

(a) The incorporators of an electric
cooperative named in the articles of incorporation shall serve as directors
until the first annual meeting of the members, and until their successors are
elected and qualify.  Subsequently, the directors shall be elected by the
members at each annual meeting or as otherwise provided by the bylaws.

 

(b) A vacancy on the board shall be filled
as provided by the bylaws.  A person selected to fill a vacancy serves
until the next regular election of directors.

Id. §
161.072 (emphasis added).

Unlike
the business organizations code provisions for nonprofit corporations, which
specifically set out the procedure to enforce the right to inspect books and
records and to obtain the list of voting members and the duty of the nonprofit
corporation to make records, books, and reports available to the public for
inspection or copying, there are no similar specific provisions set out in the
ECCA, and—as previously discussed above—they are not incorporated into the ECCA. 
Cf. Tex. Bus. Orgs. Code Ann. §§ 22.158, 22.351, 22.353; Gaughan v.
Nat’l Cutting Horse Ass’n, 351 S.W.3d 408, 414–21 (Tex. App.—Fort Worth
2011, pet. denied) (construing former articles 1396–2.23 and 1396–2.23A of the
Non-Profit Corporation Act); Lacy v. Bassett, 132 S.W.3d 119, 121, 124
(Tex. App.—Houston [14th Dist.] 2004, no pet.) (reviewing application of former
article 1396–2.23 to church nonprofit); Citizens Ass’n for Sound Energy
(CASE) v. Boltz, 886 S.W.2d 283, 285–86, 289–90 (Tex. App.—Amarillo 1994,
writ denied) (reviewing application of former articles 1396–2.23 and
1396–2.23A), cert. denied, 516 U.S. 1029 (1995); see also Melissa
Indus. Dev. Corp. v. N. Collin Water Supply Corp., 316 F. Supp. 2d 421, 426
(E.D. Tex. 2004) (construing former article 13.96–2.11B of the Non-Profit
Corporation Act, which set out procedure to inspect list of voting members).

Rather,
utilities code sections 161.070 and 161.072 focus attention on the bylaws
rather than setting out specific provisions for legal recourse.  Cf. Hilco
Elec. Co-op., 111 S.W.3d at 77–78 (construing utilities code section
161.121 in suit for declaratory judgment by members, some of whom were propane
dealers, regarding cooperative’s statutory authority to engage in propane sales).

CoServ’s
2009 bylaws comply with utilities code section 161.070 with regard to voting
rights.[14]
 See Tex. Util. Code Ann. § 161.070.  Further, by their own terms, they
are contractual in nature.  Therefore, Hackett’s—and the putative class’s—recourse,
if any, would appear to be through a breach of contract claim with regard to
the bylaws rather than a breach of statutory duty claim with regard to the
provisions in sections 161.070 and 161.072.[15]
 See Tex. Util. Code Ann. §§ 161.070, .072.  Accordingly, we
sustain the rest of CoServ’s fourth issue as it pertains to the breach of
statutory duties claim, but we overrule the portion of CoServ’s fourth issue that
pertains to the breach of contract claim under CoServ’s bylaws.[16]

3.   
Fiduciary Duties

CoServ
also argues that it owes no fiduciary duties to its members.  Nothing in the
ECCA provides for a fiduciary duty from the cooperative to its members.  See
id. §§ 161.001–.254.  Nothing in the ECCA incorporates the provisions of
the business organizations code that provide for duties of good faith and
ordinary care by the “governing persons” and officers of a corporation to the
corporation.  See Tex. Bus. Orgs. Code Ann. §§ 3.102–.103 (West 2011); Int’l
Bankers Life Ins. Co. v. Holloway, 368 S.W.2d 567, 576–77 (Tex. 1963)
(discussing fiduciary duties owed by corporate officers and directors to the
corporation).  And to the extent that a fiduciary duty might be owed by CoServ’s
directors to CoServ’s members, Hackett and the class did not sue CoServ’s directors.
 Compare Wilson v. Harlow, 860 P.2d 793, 798 (Okla. 1993) (holding no
fiduciary duty at common law between utility’s directors and its ratepayers
because utility was not a cooperative), cert. denied, 510 U.S. 1117
(1994), and Hargrave v. Canadian Valley Elec. Co-op., Inc., 792
P.2d 50, 52–53, 56–57 (Okla. 1990) (remanding summary judgment on fiduciary
duty issue in class action brought by utility ratepayer-member against electric
cooperatives and their trustees because trustees owed fiduciary duty under
Oklahoma statute and controverted issues of fact remained with regard to
whether trustees had breached their fiduciary duty), with Peoples Elec.
Co-op. v. W. Farmers Elec. Co-op., 746 F. Supp. 2d 1202, 1206 (W.D. Okla.
2010) (stating, in dispute between two cooperatives, that “[a]n assumption that
the entity itself also owes broad-based fiduciary duties runs the risk of
upsetting the balance struck by director-focused standards”).  But see True
v. Robles, 571 F.3d 412, 417–23 (5th Cir. 2009) (stating that “[t]he
relevant Texas statutes do not address whether the directors of a reciprocal
insurance exchange owe a fiduciary duty to individual subscribers, and we are
not aware of any cases, in Texas or elsewhere, that do so,” before
concluding—after an analysis of analogous law—that there is no fiduciary or
contractual relationship between individual subscribers and the board of
directors).

We
conclude that whether the cooperative itself owes a fiduciary duty to its
members is another claim best suited for a legislative determination, and we
sustain this portion of CoServ’s fourth issue.  See also McCarthy v. Middle
Tenn. Elec. Membership Corp., 466 F.3d 399, 403, 410 (6th Cir. 2006)
(stating with regard to members’ claims against cooperative for mismanagement,
self-dealing, and breach of fiduciary duty that such claims must generally be
brought as derivative actions because breaches of fiduciary duty are deemed to
injure only the corporation).

IV. 
Conclusion

Having
overruled CoServ’s third issue in part and having sustained CoServ’s fourth
issue in part, we vacate the trial court’s class certification order and remand
the case to the trial court for further proceedings without reaching CoServ’s
remaining issues or Hackett’s issues.  See Tex. R. App. P. 47.1; Gill,
299 S.W.3d at 129 (stating that when a class has been certified based on a
significant misunderstanding of the law, remand to the trial court is
appropriate so that it may determine the effect on the requirements for class
certification).

 

 

BOB MCCOY

JUSTICE

 

PANEL:  GARDNER, WALKER, and MCCOY, JJ.

 

WALKER, J. filed a dissenting opinion.

 

DELIVERED:  May 10, 2012  







 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-09-00425-CV

 

 


 
 
 Denton County Electric Cooperative, Inc. d/b/a
 CoServ Electric
 
 
  
 
 
 APPELLANT AND
 APPELLEE
 
 
 
 
  
 V.
  
 
 
 
 
 Nicole Hackett, Individually and on Behalf of
 Others Similarly Situated
 
 
  
 
 
 APPELLEE AND
 APPELLANT
 
 


 

 

----------

FROM THE 16th
District Court OF Denton COUNTY

----------

DISSENTING
OPINION

----------

I
respectfully dissent.  I agree with the majority that the trial court had a
duty to understand the substantive law, claims, and defenses in determining
whether the purported class can meet the certification prerequisites under
Texas Rule of Civil Procedure 42, but I cannot agree with the majority’s
holding—dispositive of the class’s breach-of-statutory-duties and
breach-of-fiduciary-duties claims—that the trial court misunderstood the
applicable law when we do not know that to be true based on the record before
us.

In
determining the propriety of a class action, the question is not whether the plaintiffs
have stated a cause of action or will prevail on the merits, but solely whether
the requirements of rule 42 have been met.  Eisen v. Carlisle &
Jacquelin, 417 U.S. 156, 177, 94 S. Ct. 2140, 2152 (1974); Garcia v.
Gloor, 618 F.2d 264, 267 (5th Cir. 1980), cert. denied, 449 U.S.
1113 (1981);[17]
Exxon Mobil Corp. v. Gill, 299 S.W.3d 124, 126 (Tex. 2009) (“‘Deciding
the merits of the suit in order to determine . . . its maintainability as a
class action is not appropriate.’”) (quoting Intratex Gas Co. v. Beeson,
22 S.W.3d 398, 404 (Tex. 2000)).  “Viability” is not a requirement for class
certification under rule 42.  Clark v. Strayhorn, 184 S.W.3d 906, 909
(Tex. App.—Austin, pet. denied), cert. denied, 549 U.S. 995 (2006); see
Tex. R. Civ. P. 42.  Although the supreme court has instructed us that
“dispositive issues should be resolved by the trial court before certification
is considered,” State Farm Mut. Auto. Ins. Co. v. Lopez, 156 S.W.3d 550,
557 (Tex. 2004), as our sister court in Austin has explained,

Lopez does not create a
new procedural means by which appellate courts can adjudicate the merits of
dispositive issues not otherwise within their jurisdiction to consider. 
Instead, it envisions that such issues should be adjudicated in the trial court
in the first instance, through the established procedural mechanisms under our
rules—such as pleas to the jurisdiction, summary-judgment motions, and special
exceptions—rather than by what are substantively the same proceedings initiated
at the appellate level.  Cf. Lopez, 156 S.W.3d at 557 (declining to
reach viability issues and remanding so trial court could address pending plea
to the jurisdiction and special exceptions).

Furthermore, the concept of viability
addressed in Lopez emanates from the core requirement that, before
certification, trial courts perform a “rigorous analysis” to determine whether
rule 42’s requirements are met.  Bernal, 22 S.W.3d at 435.  To “make a
meaningful determination of the certification issues,” Peake, 178 S.W.3d
at 778, trial courts must resolve disputes affecting the underlying substantive
law prior to certification because “courts can hardly evaluate the claims,
defenses or applicable law without knowing what the law is.”

Texas
Parks & Wildlife Dep’t v. Dearing, 240 S.W.3d 330, 357 (Tex.
App.—Austin 2007, pet. denied); see Clark, 184 S.W.3d at 909
(interpreting trial court’s order dismissing case as summary judgment, rather
than order on class certification, and reviewing as such); see also Miller
v. Mackey Int’l, Inc., 452 F.2d 424, 428 (5th Cir. 1971) (“[T]here is
absolutely no support in the history of [federal] Rule 23 or legal precedent
for turning a motion under Rule 23 into a Rule 12 motion to dismiss or a Rule
56 motion for summary judgment by allowing the district judge to evaluate the
possible merit of the plaintiff’s claims at this stage of the proceedings.”).

Here,
in this interlocutory appeal of the trial court’s class certification order, the
majority delves into a lengthy analysis of the interplay between the Texas
Electric Cooperative Corporation Act (ECCA) and chapter 22 of the Texas Business
Organizations Code and ultimately determines that the trial court improperly
certified the class based on a misunderstanding of the law.  However, the trial
court did not discuss these statutes in its order certifying the class, nor
were they discussed at the hearing on the certification.  We do not know if the
trial court misconstrued or misapplied the applicable law.  Cf. Gill,
299 S.W.3d at 127 (explaining, in holding that trial court misapplied case law,
that trial court acknowledged and distinguished case law that was, in fact,
indistinguishable); Lopez, 156 S.W.3d at 557 (refusing, in interlocutory
appeal of trial court’s certification order, to address argument that
policyholders’ claims on merits should be dismissed when trial court did not
identify specific causes of action to be decided nor indicate how they would be
tried or substantive issues that would control their disposition).  In fact, in
its order certifying the class, the trial court found that common questions of
the class include “[w]hether CoServ has a statutory duty to the
Voting Subclass vis-à-vis governance, director elections, and voting
procedures.”  [Emphasis added.]  Moreover, the majority’s holding reaches the
viability of the class’s claims, a matter best addressed through established
procedural mechanisms—such as pleas to the jurisdiction, summary-judgment
motions, and special exceptions—that are not the basis of this appeal.  Cf.
Lopez, 156 S.W.3d at 557 (declining to reach viability issues and remanding
so trial court could address pending plea to the jurisdiction and special
exceptions).

For
these reasons, I would overrule Appellant’s fourth issue and address its
remaining issues.

 

 

SUE WALKER
JUSTICE

 

DELIVERED: May 10, 2012









[1]See Tex. Civ. Prac.
& Rem. Code Ann. § 51.014(a)(3) (West 2008 & Supp. 2011).





[2]Because of our
disposition with regard to CoServ’s issues, we do not reach Nicole Hackett’s
three issues regarding the trial court’s decisions on appointment of class
counsel and bifurcation.  See Tex. R. App. P. 47.1.





[3]See Brady v. Denton
Cnty. Elec. Co-op., Inc., No. 4:09-CV-130, 2009 WL 3151177, at *7 (E.D. Tex.
Sept. 28, 2009) (remanding case to state court).





[4]Policy No. 310
provides that information that is of a confidential corporate nature will not be
provided to the membership, such as “[t]he names and addresses or telephone
numbers of members, past and/or current” or “[a]ny information which
constitutes a trade secret, process, program, trademark, or other legally
protectable confidential information, or thing owned, or protected in
confidentiality by contract, by the Cooperative.”

 





[5]CoServ alleged that
Glover requested a copy of the members’ personal information while he was an
incumbent director running against a challenger.  The board gave Glover the
information with restrictions.  Glover was re-elected and then asked for more
detailed information on voters in the 2005 and 2006 elections so that he could
analyze it to “understand who is voting and why.”





[6]Glover also sued on
behalf of an equity subclass—“[a]ll current and former members who have
furnished revolving equity capital that has been taken in whole or in part by
CoServ’s ‘discounting’ program or other unlawful acts alleged herein,” but because the trial
court did not certify this subclass, and no one appeals the denial of
certification as to this class, the equity subclass is not pertinent to our
resolution here.





[7]The class
certification order also included a statement by the trial court that it
intended to bifurcate the Voting Subclass claims “from any other claims or
counterclaims made by parties in this case and to try the Voting Subclass case
first, in order to avoid prejudice to the Voting Subclass.”  However, in the
trial plan attached to the order, the trial court lined out the provision
regarding bifurcation.





[8]Additionally, Hackett
filed a motion for leave to allow class counsel to associate with outside
counsel for purposes of any appellate work relating to class certification, which
the trial court denied and which she now complains about in her appeal. 
However, as noted above, because we vacate the trial court’s class
certification order, we do not reach the issues Hackett presents in her
appeal.  See Tex. R. App. P. 47.1.





[9]Not long after the
hearing on the proposed class certification order and before CoServ filed its
notice of this interlocutory appeal, Brady and Hackett amended their petition,
re-adding the breach of statutory duties claim.  Therefore, it would be a
useless act on our part to reverse the class certification order on this basis
merely because the trial court committed a technical error by signing a flawed
order that now matches the subsequently filed pleading, only to have to review
the same substantive legal issues later.  See, e.g., Davis v.
Hemphill, 243 S.W. 691, 694 (Tex. Civ. App.—Fort Worth 1922, no writ) (op.
on reh’g) (stating that it would be a useless act on the court’s part to
reverse the judgment just because the trial court committed a technical error
in overruling a motion for further time); see also Wheeler v. Duke, 29
Tex. Civ. App. 20, 23, 67 S.W. 909, 911 (Tyler 1902, no writ) (“[A] court is
never required to perform a vain and useless act.”).





[10]Article 1528b,
section 36 of the revised civil statutes was the predecessor to section 161.005
and stated, “This Act is complete in itself and shall be controlling.  The
provisions of any other law of this State except as provided in this Act, shall
not apply to a corporation organized, or in process of organization, under this
Act.”  Act of Mar. 30, 1937, 45th Leg., R.S., ch. 86, § 36, 1937 Tex. Gen.
Laws 161, 170 (emphasis added), repealed by Act of May 8, 1997, 75th
Leg., R.S., ch. 166, § 9, 1997 Tex. Gen. Laws 713, 1018.  The Public Utility
Regulatory Act repealed the second sentence in article 1528b, section 36.  Cent.
Power & Light Co. v. Pub. Util. Comm’n of Tex., 649 S.W.2d 287, 289
(Tex. 1983) (holding that a legislature cannot prevent future legislatures from
amending or repealing a statute).





[11]Then-article 1436a,
section 1 of the revised civil statutes provided that certain electric lines
shall be maintained at a height above the ground of at least twenty-two feet or
be placed in underground pipes.  See Act of May 19, 1949, 51st Leg.,
R.S., ch. 228, 1949 Tex. Gen. Laws 427, 427, repealed by Act of May 8,
1997, 75th Leg., R.S., ch. 166, § 9, 1997 Tex. Gen. Laws 947, 1018 (current
version at Tex. Util. Code Ann. § 181.045); Tri-Cnty. Elec., 217 S.W.2d at
683.





[12]Texas Electric
Cooperatives—a lobbying organization for cooperative electric utilities in
Texas—adds “concern for community” to the list.  See Tex. Electric
Cooperatives, The Seven Cooperative Principles, at http://www.texas-ec.org/about_tec/the_seven_cooperative_principles/
(last visited May 7, 2012).





[13]The Texas Blue Sky
Law regulates the sale of securities in and from the state.  Citizens Ins.
Co. of Am. v. Daccach, 217 S.W.3d 430, 441 (Tex. 2007).





[14]Because CoServ’s
bylaws were submitted as sealed records, we are not at liberty to directly
discuss their contents.  See, e.g., E.F. v. Tex. Dep’t of Family &
Protective Servs., No. 03-11-00325-CV, 2011 WL 4937228, at *1, 3 (Tex.
App.—Austin Oct. 14, 2011, order) (forgoing public discussion of the evidence
underlying the jury and trial court decisions because the record had been
sealed); In re Energy XXI Gulf Coast, Inc., No. 01-10-00371-CV, 2010 WL
5187730, at *6 (Tex. App.—Houston [1st Dist.] Dec. 23, 2010, orig. proceeding)
(mem. op.) (“Because the trial court reviewed [the sealed documents] in camera
and they remain sealed in the record before us, we are not at liberty to
discuss the contents of these documents in our opinion.”).





[15]Further, Hackett
testified that she had never attended CoServ’s annual meeting or voted in a
CoServ board election.  Hackett does not explain in her brief how, even if
sections 161.070 and 161.072 had provided her with a statutory cause of action,
she personally would have standing to sue based on these provisions, calling
into question her commonality with the class.  See Union Pac., 111
S.W.3d at 75 (discussing lack of commonality based on substantive causes of
action).





[16]Based on our
construction of the ECCA, it appears that the only recourse for Hackett and the
class, if any, is through the breach of contract claim on CoServ’s bylaws,
although there is not much authority on the issue, and neither party briefed
the issue thoroughly in this appeal.  See, e.g., Baldwin Cnty. Elec.
Membership Corp. v. Catrett, 942 So.2d 337, 345–46 (Ala. 2006) (stating
that “[t]he right to vote is granted to all members of the Cooperative under
the bylaws and by statute.  Thus, each member of the Cooperative had a
contractual right to vote,” and concluding that members could bring a direct
action instead of a derivative one because they were enforcing their individual
rights to vote rather than a right of the corporation); see also Matanuska
Elec. Ass’n, Inc. v. Waterman, 87 P.3d 820, 823–24 (Alaska 2004) (stating
that the rules of contract interpretation applied to the interpretation of an
electric cooperative’s bylaws before affirming summary judgment for member who
sued for violation of bylaws); Granbois v. Big Horn Cnty. Elec. Co-op., Inc.,
986 P.2d 1097, 1101–02 (Mont. 1999) (noting that the relationship between an
electric cooperative and each of its members is contractual in nature, as
defined by the cooperative’s bylaws, rules, and regulations and that the
bylaws, rules, and regulations—as well as their implementation—must be
reasonable).





          [17]Because
Texas Rule of Civil Procedure 42 is patterned after its federal counterpart,
federal decisions and authorities interpreting current federal class-action
requirements are persuasive authority in applying rule 42.  Sw. Ref. Co.,
Inc. v. Bernal, 22 S.W.3d 425, 433 (Tex. 2000); see Fed. R. Civ. P.
23; Tex. R. Civ. P. 42.